Oral argument not yet scheduled

_____

No. 24-1925

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

SOIL FRIENDS, LLC, a Michigan limited liability company; BENJAMIN MARTIN, an individual; SARAH MARTIN, an individual

Plaintiffs -Appellants,

v.

CHARTER TWONSHIP OF COMSTOCK, MI, a Michigan municipal corporation; KALAMAZOO, MI AREA BUILDING AUTHORITY, a Michigan municipal corporation or agent of Comstock Township; JODI STEFFORIA, individual; RANDY THOMPSON, individual, SCOTT HESS, individual; MATTHEW MILLER, individual; RON SPORTEL, individual; ALLAN FAUST, individual; JEFF AMPEY, individual; PATRICK HANNA, individual; CLYDE SHERWOOD, III, individual; MIKE ALWINE, individual

Defendants-Appellees.

_____

Appeal from the United States District Court

for the Western District of Michigan

No. 1:23-cv-01267 (Beckering, J.)

_____

# OPENING BRIEF OF PLAINTIFFS -APPELLANTS
# SOIL FRIENDS, LLC ET AL.

_____

Steven J. Kustra
*KUSTRA & BLOOM PLC*
21002 Mack Avenue
Grosse Pointe Woods, MI 48236
(313) 586-4444
skustra@kustrabloom.com

Counsel for Plaintiffs -Appellants
Soil Friends, LLC et. al.

Date: February 21, 2025

## II.     <u>CORPORATE DISCLOSURE</u>

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
## and Financial Interest

Sixth Circuit
Case Number: 24-1925          Case Name: Soil Friends, LLC

Name of counsel: Steve J. Kustra, Esq.

Pursuant to 6th Cir. R. 26.1, Mr. Benjamin Martin, Ms. Sarah Martin and Soil Friends, LLC
                              *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

No

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome?  If yes, list the identity of such corporation and the nature of the financial
    interest:

No

### CERTIFICATE OF SERVICE

I certify that on July 25,2025 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

                    s/ *Steven G. Kustra*

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

III.   **TABLE OF CONTENTS**

II.  CORPORATE DISCLOSURE ............................................................. i

III.   TABLE OF CONTENTS.............................................................. iii

IV.   TABLE OF AUTHORITIES ......................................................... iv

V.  STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................1

VI.   STATEMENT OF JURISDICTION ..................................................2

VII.   STATEMENT OF THE ISSUES ....................................................3

VII.   STATEMENT OF THE CASE .......................................................4

IX.   SUMMARY OF THE ARGUMENT............................................................17

X.  LEGAL ARGUMENT ...........................................................................18

A.  STANDARD OF REVIEW ................................................................18

B.    THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFFS WERE NOT SEEKING A COURSE OF ACTION AGAINST COMSTOCK TOWNSHIP AND KABA. ...................................................................20

C.    THE TRIAL COURT ERRED IN ITS ANALYSIS OF QUALIFIED IMMUNITY ........................................................................................28

D.    PLAINTIFFS ASSERTS VIABLE CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS AND MUNICIPAL ENTITIES AND DEMENDS THEY BE ADJUDIACTED. .......................................35

E.    THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS WITH PREJUDICE....................................57

XI.   CONCLUSION............................................................................58

XII.   CERTIFICATE OF COMPLIANCE ...........................................59

XIII.   CERTIFICATE OF SERVICE....................................................59

XIV.   ADDENDUM ..............................................................................60

# IV.   <u>TABLE OF AUTHORITIES</u>

## Cases

*Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970) ....................................................30

*Anderson v. Charter Twp. of Ypsilanti, 266 F.3d 487, 493 (6th Cir. 2001* ...............55

*Anderson v. Creighton*, 483 U.S. 635 (1987)..............................................................31

*Armstrong v.  Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, (1965) ........................47

*Armstrong v. Manzo* [1965], 380 U.S. 545, 552 ............................................. 49, 50

*Armstrong v. U.S.*, 364 U.S. 40, 49, 80 S. Ct. 1563 (1960) ...................................52

*Barton v. Norrod*, 106 F.3d 1289 (6th Cir. 1997 ...................................................32

*Bazzi v. City of Dearborn*, 658 F.3d (6th Cir. 2011............................................32

*Bd. of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972) ..................................48

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................20

*Bell v. Ohio State Univ*., 351 F.3d 240 (6th Cir. 2003).........................................41

*Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564 (6th Cir. 2008) ..........................48

*Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957) ....43

Champion v. Outlook Nashville, Inc., 380 F.3d 893 (6th Cir. 2004)). ...................33

*Chesser v. Sparks*, 248 F.3d 1117, (11th Cir. 2001) .............................................33

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)..............................................24

*Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-47, 118 S. Ct. 1708 (1998)* ........42

*County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708 (1998).................41

*Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016) ...........................32

Craighead v E.F. Hutton & Co.899 F.2d 485 (6th Cir. 1990). .................................59

*Davey v. Tomlinson*, 627 F. Supp. 1458 (E.D. Mich. 1986). ..................................19

*Directv Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)..........................................20

*Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990) ........................................53

*EJS Props., LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012)...........................41

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) ...........................................................58

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d
    223 (6th Cir. 2005)...........................................................................................32

*Fuentes v. Shevin* (1972), 407 U.S. 67, 80 ...............................................................49

*G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328 (6th Cir. 1990).45

*G.M. Engineers & Assocs., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328 (6th Cir. 1990)
    .............................................................................................................................48

*Gentek Bldg. Prods. v. Sherwin-Williams Co*., 491 F.3d 320 (6th Cir. 2007)..........18

*Gould v. Pechiney Ugine Kuhlman & Trefimetaux*, 853 F.2d 445 (6th Cir. 1988)..18

*Grose v. Caruso*, 284 F. App'x 279 (6th Cir. 2008)...................................................33

*Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987) ........................................ 28, 29

*Harcz v. Boucher*, 763 F.App'x 536 (6th Cir. 2019) ................................................30

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...................................................... 31, 32

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556 (6th Cir. 2011) .....................32

*Hooks v. Hooks, 771 F.2d 935* (6th Cir. 1985)........................................................28

*Hopper v. Plummer*, 887 F.3d 744 (6th Cir. 2018) ..................................................35

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497, 107 S. Ct. 1232. (1987)..............................................................................................................56

*King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012)......................................................40

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U. S. 163 (1993)....................................................................................................22

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074 (2005).............54

*LULAC v. Bresdesen*, 500 F.3d 523 (6th Cir. 2007)................................................20

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).............................................. 49, 50

McKenna v. Edgell, 617 F.3d 432 (6th Cir. 2010).....................................................33

*Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) 47

*Murr v. Wisconsin*, 582 U.S. 383, 392, 137 S. Ct. 1933, 198 L. Ed. 2d 497 (2017) ...........................................................................................................................52

*Ohio Bell Tel. Co.* v. *PUC*, 301 U.S. 292 (1937)......................................................50

*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)). ..............18

*Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741 (1983)...........................48

*Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992) ..................... 41, 46

*Pembaur v City of Cincinnati*, 475 U.S. 469 (1986) ................................................23

*Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646 (1978) .. 52, 55

Pennsylvania Coal Co v Mahon 260 U.S. 393, 415, 43 S. Ct. 158 (1922) .............53

*Raceway Park, Inc. v. Ohio*, 356 F.3d 677 (6th Cir. 2004)......................................55

*Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268 (6th Cir. 1988). ..............49

*Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955 (2023) .....................................47

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014) ..................................................36

*Rochin v. California*, 342 U.S. 165, 172-73, 72 S. Ct. 205 (1952).........................42

*Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005-06, 81 L. Ed. 2d 815, 104 S. Ct. 2862 (1984).......................................................................................................56

*Rudd v. City of Norton Shores,* 977 F.3d 503 (6th Cir. 2020).................................30

*Saucier v. Katz*, 533 U.S. 194 (2001).......................................................................31

*Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031 (6th Cir. 1992) ......45

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011) ..........................................38

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005).......................... 26, 27

*Tri-Corp Management Co. v. Praznik*, 33 F. App'x 742 (6th Cir. 2002)........... 53, 54

*Tri-Corp Management Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002) .........54

*United States* v. *Abilene & S. R. Co*., 265 U.S. 274 (1924)....................................51

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155 101 S. Ct. 446 (1980) .................................................................................................................................56

*Weberg v. Franks* 229 F.3d 514 (6th Cir. 2000) ............................................... 28, 29

*Wesley v. Campbell,* 779 F.3d 421 (6th Cir. 2015)..................................................32

*West v. Atkins*, 497 U.S. 42 (1988). ..........................................................................30

*Wichita R. & Light Co*. v. *PUC*, 260 U.S. 48, 57-59 (1922)....................................51

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981). ..............................................19

*Wong Yang Sung* v. *McGrath*, 339 U.S. 33 (1950) .................................................51

## Statutes

28 U.S.C. § 129 ...........................................................................................................2

28 U.S.C. § 1331 ..........................................................................................................2

42 U.S.C. § 1983 ................................................................................................. passim

Fed. R. Civ. P. 15(a)(2 ...............................................................................................22

Fed. Rule Civ. Proc. 8(a)(2 .......................................................................................21

Mich. Comp. Laws § 42.1(2) ......................................................................................25

## V.　　STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs-Appellants (hereinafter "Plaintiffs") respectfully request an oral argument. Plaintiffs aver that oral argument would aid the Court in better understanding this important appeal and the lengthy history and issues that led to the commencement of this action, also oral argument is necessary to present the controlling law and mitigate claims from Defendant-Appelees (hereinafter "Defendants").

## VI.   <u>STATEMENT OF JURISDICTION</u>

Plaintiffs sued Defendants in the Western District of Michigan under 42 U.S.C. § 1983 and § 1985 alleging First Amendment retaliation, violations of procedural and substantive due process under the Fourteenth Amendment, civil conspiracy and various state law violations. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The District Court's September 17, 2024, Opinion and Order dismissing Plaintiffs' federal claims against all Defendants disposed of all claims of all parties and was a final order for purposes of appeal. Opinion & Order, R.35, Page ID# 808-831 This Court has jurisdiction under 28 U.S.C. § 1291. Plaintiffs filed their timely Notice of Appeal on October 17, 2024.

## VII.  <u>STATEMENT OF THE ISSUES</u>

**I.  WHEATER THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFFS WERE NOT SEEKING A COURSE OF ACTION AGAINST COMSTOCK TOWNSHIP AND KABA.**

Plaintiffs' answers: Yes.

Defendant answer: No.

**II. WHEATER THE TRIAL COURT ERRED IN ITS ANALYSIS OF QUALIFIED IMMUNITY**

Plaintiffs' answer: Yes.

Defendant answer: No.

**III.      WHEATHER PLAINTIFFS ASSERTS VIABLE CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS AND MUNICIPAL ENTITIES**

Plaintiffs' answer: Yes.

Defendant answer: No.

**IV.      WHEATHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS WITH PREJUDICE**

Plaintiffs' answer: Yes.

Defendant answer: No.

3

## VII.  STATEMENT OF THE CASE

### A. Factual Background

Plaintiffs Soil Friends, LLC ("Soil Friends") is a twenty-two (22) acre farm located in Defendant Comstock Charter Township ("Comstock or Township") that is owned and operated by Plaintiffs Ben and Sarah Martin. First Amnd. Compl., R. 20, Page ID# 269. Plaintiffs Soil Friends primary operation is the production of hard cider utilizing ingredients, including pumpkins, squash, lavender, and jalapenos, *inter alia*, grown on site. *Id.* Plaintiffs Soil Friends were approved to seek a winery/cidery license from MLCC by Defendant Comstock on October 17, 2017, by a 7-0 vote. *Id.* at PageID.270.

Beyond the hard cider, Plaintiffs' business includes three (3) operations licensed by the State of Michigan including: (1) a winery and tasting room issued by the Michigan Liquor Control Commission ("MLCC"); (2) a farm market under Michigan's Right to Farm Act ("RTFA") that is Michigan Department of Agriculture Rural Development ("MDARD") compliant; and (3) an MDARD licensed Retail Food Establishment. *Id.* In addition to these licenses, MLCC has further granted Plaintiffs two (2) permits for Outdoor Service Areas on their property. *Id.*

During 2019, Plaintiffs built a new red barn on their property to further support Plaintiffs Soil Friends' operations. *Id.* at PageID.271. On April 1, 2022, Defendant Jodi Stefforia, the Community Development Director for Comstock,

contacted Plaintiffs via email to inform them a special exception use would be required before Plaintiffs could hold private events or parties in the red barn. *Id.*; FAC Exhibit 5, R. 20-5, Page ID# 347-351. A further e-mail from Defendant Mike Alwine, a building official from Defendant Kalamazoo Area Building Authority ("KABA") outlined that Plaintiffs would need to submit a "Code Compliance Design by a registered design professional" to ensure compliance with the Building Code. First Amnd. Compl., R. 20, Page ID# 272; *Id.* Within the hour, Plaintiffs responded to both e-mails agreeing to remove those offering until Plaintiffs had gone through the necessary process to do so. *Id.* However, none of the correspondence from Defendants Jodi Stefforia or Mike Alwine indicates that the remainder of Plaintiffs' operations, including food, alcohol sales, or live music on their property, were not permitted. *Id.*

As a result of communications from both Defendants Comstock and KABA, Plaintiffs retained an architect to assist them with seeking approval for the change of occupancy from Defendant Comstock. *Id.* The architectural drawings for Plaintiffs' red barn were designed according to A2-F2 regulations that would allow both occupancy usage for an assembly (i.e. restaurants, casinos, banquet halls, etc.), and occupancy usage for a low-hazard industrial factory (i.e. beverages up to sixteen (16) percent alcohol). *Id.* at 273. The A2-F2 architectural drawings for the red barn would allow Plaintiffs to utilize the space as (1) a farm market; (2) an on-premises

5

tasting room; and (3) as a wedding/event space. *Id.* Plaintiffs submitted their architectural drawings and affidavit for building intended occupant load to Defendant Mike Alwine on September 19, 2022. Defendant Mike Alwine found Plaintiffs' request for intended building occupancy affidavit to be "acceptable" and requesting minor additions. *Id.* at PageID.274; FAC Exhibit 7, R. 20-7, Page ID#356.

Despite Plaintiffs believing that they were moving forward toward the red barn being compliant, Defendant Comstock issued a citation to Plaintiffs on October 19, 2022. *Id.* The citation issued by Defendant Comstock did not reference the prior correspondence related to "barn events" and alleged Plaintiffs did not have "zoning approval or permits for how barn is being used to serve Food/alcohol/Live Music[sic]." *Id.*; FAC Exhibit 8, R. 20-8, Page ID#358. Defendant Comstock's citation only pertained to activities in the red barn and did not reference any other of Plaintiffs' operations. *Id.*

On October 20, 2022, Plaintiffs posted a picture of the Defendant Comstock's signage condemning the red barn with a caption stating:

> [T]he farm market building isn't able to be open. This is what horrendous leadership looks like from our elected officials, someone had a hair up their you know what, and needed a power grab! You don't go slapping orange stickers without talking and working issues out with local businesses, no call or visit to even try and work together! We have email correspondence April 1 that we would continue operations as is until we were permitted to have wedding and private events, as we are currently working through jumping all the hoops to get that done and in the midst of our fall season, then blindsided by this [.] Most of the entire township board needs rebuilt and I will be part of working with

other like minded community members to make this a better township
to live, enjoy and do business in.

*Id.* at PageID.275; FAC Exhibit 9, R. 20-9, Page ID# 359-36060. On October 27,

2022, Defendant Comstock held a meeting of its Planning Commission wherein the

issue of amending existing zoning and ordinances for agritourism, including

Plaintiffs' issues were discussed. *Id.* Defendant Jodi Stefforia stated that the current

ordinances may or may not address Plaintiffs' sales of "hot food, alcohol sales, bar

and live music and possibly other activities." *Id*. at 276; FAC Exhibit 10, R. 20-10,

Page ID# 361-369. Defendant Catherine Kaufman, the attorney for Defendant

Comstock, stated, "The Township [Defendant Comstock] does not have to allow

everything happening at [Soil Friends]." *Id.*

On October 31, 2022, Plaintiffs held a meeting with Defendants Jodi Stefforia,

Randy Thomspon, Scott Hess to discuss alleged noise complaints, alleged violations

pertaining to festivals being held on the property, and Defendant Comstock's

condemnation of the red barn. Id. Defendant Jodi Stefforia implied that Plaintiffs

had stretched the limits of Defendant Comstock's definition of a "farm market" by

having music and most concerningly, that Plaintiffs' winery/cidery was not

permitted. *Id.* at PageID.277. Defendant Randy Thompson insinuated that Plaintiffs'

Facebook posts were damaging the reputation of Defendant Comstock and its

officials and should be stopped. *Id.* Again, Plaintiffs agreed to cease operations in

the red barn and to provide information to Defendant Comstock's officials to work through the requirements. *Id.*

1.  On November 18, 2022, Plaintiffs attended an informal hearing for Defendant Comstock's violation for the red barn. Michigan law provides that neither the defendant nor the Plaintiffs can be represented by an attorney at an informal hearing, including a prosecuting attorney or an attorney for a political subdivision. *Id.* Despite the statutory prohibition, Defendant Comstock was represented by Defendant Roxanne Seeber in violation of Michigan law that only served to further prejudice Plaintiffs. *Id.* Despite the Magistrate only imposing a $25.00 fine, Defendant Roxanne Seeber utilized the informal hearing to raise other issues regarding Plaintiffs' operations. *Id.* Despite the Magistrate stating that the issues raised by Defendant Roxanne Seeber were beyond the scope of the hearing, Defendant Roxanne Seeber submitted an order for entry that was tantamount to a permanent injunction and essentially closed Plaintiffs' business operations. *Id.;* FAC Exhibit 11, R. 20-11, Page ID# 370-374.

On November 30, 2022, and amid the Court's wrongful order, Plaintiffs posted on Facebook as follows:

> Here's a few ideas we should all talk about for the best interest in our township just for starters[.]

Community development director is a hired position – We should ask what happened with her position in previous townships, whats [sic] the track record? Many of us believe it's the best interest for business owners in the community, that she pack her boxes and go. It's a fireable position.

Township Supervisor & Superintendent
Randy [Thompson] – you took an oath to protect the health, safety and welfare for those in this community – Scott [Hess] you were hired. You both clearly just let my family and our patrons down on all of these! You guys had your attorney write an order that the magistrate stamped in order to shut down a farm that provides the community access to fresh food and enjoyment. You have blocked us from buying permits for improvements and also allowed harassment to other local business leaders. Based upon community comments here, not grown our community for the better clearly you see the comments about the township on these post. It's not looking good boys I hope your not considering reelection. You would be doing us all a favor if you packed your boxes as well, I know the money helps – our community would rather you it if it expedited the process of you getting out of the way so real leaders can get to work!

*Id.* at PageID.281-283; FAC Exhibit 12, R. 20-12, Page ID# 375-377. On December 2, 2022, Plaintiffs, now with the assistance of counsel, filed a motion for reconsideration of the November 18, 2022 Order drafted by Defendant Roxanne Seeber. *Id.* at PageID.283.

Amid a public backlash for Defendants Comstock and Roxanne Seeber's wrongful order, Defendant Comstock Township's official Defendant Matthew Miller published a Statement on Defendant Comstock website titled "FOR IMMEDIATE

RELEASE: Comstock Charter's statement on Soil Friends Hard Cider Company."
*Id* at PageID. 283-284; FAC Exhibit 13, R. 20-13, Page 378-383. Defendant
Comstock's "Statement" contained numerous false statements that were both
factually and legally incorrect. *Id.* Defendant Comstock repeated these false
statements, through their attorney Defendant Catherine Kaufman, at a board meeting
held on December 5, 2022. *Id.* at PageID. 284.

As a result of the ongoing issues, Defendant Jodi Stefforia sent Plaintiffs a
letter on December 7, 2022, summarizing the zoning approvals and necessary
information Defendant Comstock required to bring Plaintiffs into compliance with
their ultra vires and unreasonable conditions. *Id.* at PageID.285; FAC Exhibit 14, R.
20-14, Page ID# 384-391. Plaintiffs again posted their views as to Defendants'
communications on Facebook, stating:

> My township officials are literally concerned about selling
> cut Christmas trees and Santa visiting the farm [.] This has
> got to be a joke [.]

*Id* at PageID.286.; FAC Exhibit 15, R. 20-15, Page ID# 392-393.

Due to the complete shutdown of Plaintiffs' business and the district court's
denial of Plaintiffs' motion for reconsideration, Plaintiffs filed a complaint for
superintending control over the 8th District Court for the County of Kalamazoo in
the 9th Circuit Court for the County of Kalamazoo on January 17, 2023. *Id.;* FAC
Exhibit 16, R. 20-16, Page ID# 394-415. The complaint for superintending control

went unchallenged with Defendants agreeing to meet and confer regarding the November 18, 2022, Order having already damaged Plaintiffs. *Id.*

On February 21, 2023, a Stipulated Order was entered between Plaintiffs and Defendant Comstock amending the November 18, 2022, Order to allow Plaintiffs to engage in activities: permitted by their MLCC licenses, their farm market Generally Accepted Agricultural Management Practices ("GAAMP"), providing Plaintiffs twenty-one (21) days to submit an application for special exception with Defendant Comstock, requiring the Defendant Comstock to review and process the application in good faith and a timely manner; and imposing contempt for any breach of the Order. *Id.* at PageID.287; FAC Exhibit 17, R. 20-17, Page ID# 416-420. It was an essential term, understood and agreed to by all parties, that the Stipulated Order's allowance for the red barn to be used for "agricultural processing" included Plaintiffs ability to continue producing their hard cider. *Id.*

Despite the Stipulated Order appearing to have resolved the issues, Defendant Comstock and its officials immediately breached the provisions of the agreement. *Id.* On March 2, 2023, Defendant Jodi Stefforia sent Plaintiffs an e-mail outlining that Defendant Comstock's officials had reviewed the special exception use and site plan approval request for usage of the red barn. *Id*. at PageID.287-288. However, Defendant Jodi Stefforia included Defendant Comstock's Fire Marshall's comments including five (5) requirements for approval, one of which was an automatic

sprinkler system. *Id.* at PageID.288. Upon Plaintiffs' investigation with an expert, Plaintiffs learned that the Fire Marshall's requirements were not only beyond the fire code but would cost in excess of $200,000.00. *Id.* The expert indicated to Plaintiffs that he had never encountered such an onerous condition for a building the size of Plaintiffs' red barn. *Id.*

On April 13, 2023, Plaintiffs special exception use was scheduled on the agenda for Defendant Comstock's planning commission meeting. *Id.* at PageID.289. Despite Plaintiffs having provided all required documentation for the approvals, prior to the meeting Defendant Jodi Stefforia recommended postponing the decision due to issues unrelated to the red barn including written verification regarding the driveway and the adequacy of the well. *Id.* This was another calculated delay of the approval process despite Defendant Comstock being required to proceed in good faith. *Id.*

Again, on April 27, 2023, Plaintiffs' special exception use was on Defendant Comstock's Planning Commission meeting agenda. *Id.* at PageID.290. At the start of the meeting, Defendant Patrick Hanna tabled a motion to strike item 5a pertaining to Plaintiffs' special exception use and site plan review from the agenda. *Id.* Defendant Patrick Hanna's motion was passed by roll call vote. *Id.*; FAC Exhibit 21, R. 20-21, Page ID# 440-450. When Defendant Catherine Kaufman asked why Plaintiffs were stricken from the agenda, despite the Stipulated Order that Plaintiffs'

requests be reviewed in good-faith and processed in a timely manner, Defendant Patrick Hanna stated that he did not approve of Plaintiffs Ben Martin's character. *Id.* After a subsequent motion added Plaintiffs back to the agenda, Defendant Comstock approved Plaintiffs special exception use subject to the following conditions:

- Hours are limited to 9 a.m. to 9 p.m. Monday through Sunday.
- No amplification of music outside the barn.
- No use of speakers outside the barn.
- No access to East Main Street.
- All required federal, state, county, and local licensing, and approvals.
- Annual review of the special exception use for three years with schedule of review may be amended.
- Lighting shall comply with the zoning ordinance.
- Any change in license type requires Planning Commission approval.
- Any change in production beyond a small winemaker license requires Planning Commission approval.

*Id.* at PageID.291. Furthermore, Plaintiffs' site plan approval would be subject to approval by the Fire Marshall and the Road Commission of Kalamazoo County. *Id.*

On May 22, 2023, Plaintiffs contacted Defendant Mike Alwine via email seeking what information would be required for Plaintiffs to obtain building permits for the red barn. Id. at PageID.292.; FAC Exhibit 22, R. 20-22, Page ID# 451-452. The following day, Defendant Mike Alwine replied stating that Plaintiffs would be required to start a new application because the new requirements were for a "wine tasting room" and the previous application was for a "wedding venue/farm market."

Id. Plaintiffs' previous A2 occupancy already contemplated and accounted for uses including "wedding/private event space" or a "winery tasting room." *Id*.at PageID. 293.

On or about June 8, 2023, Plaintiffs were contacted by MLCC stating that Defendant Scott Hess had informed them that Plaintiffs did not have approval to manufacture wine/cider in the red barn. *Id*. Defendant Scott Hess' representations to MLCC were false when made as Plaintiffs had been approved to do so since April 27, 2023. *Id.* Defendant Hess' representations were not only knowingly false but malicious because he was involved in the processes leading to the Stipulated Order and designed to further harm Plaintiffs.

2. Determined to be able to use their red barn, on or about August 24, 2023, Plaintiffs sought to engage an engineer in meeting the approvals for their building permits and site plan. *Id.* On or about September 1, 2023, Plaintiffs were informed that the engineer would no longer be willing to assist Plaintiffs based on conversations they had with officials from Defendants KABA and Comstock. These conversations coincided with the 8th District Court's Order denying Plaintiffs' motion for order to show why Defendants should not be held in contempt. Atty Mtn to Dismiss, R. 23-8, Page ID# 574-580. Plaintiffs were informed that Defendants KABA and Comstock would never approve any building permits to be issued to Plaintiffs because the Defendants did not like

14

Plaintiffs Ben Martin nor approve of Plaintiffs Soil Friends' operations. First Amnd. Compl., R. 20, Page ID# 264-338. Plaintiffs were further informed that Defendants Comstock, KABA, and their officials would make the cost of Plaintiffs obtaining a building permit cost prohibitive to ensure that Plaintiffs could not open a farm market/manufacturing facility in the red barn. *Id.*

As a result of the ongoing constitutional deprivations committed by Defendants, Plaintiffs have been unable to operate their business, seeking further approvals from Defendant Comstock, and have been significantly and adversely affected. As it stands, Plaintiffs have not been able to utilize their red barn for any commercial purpose since November 18, 2022, and will be unable to do so due to Defendant Comstock's continued weaponization of their zoning ordinance. Without any recourse, Plaintiffs will continue to suffer due to the ongoing and continued illegal and wrongful conduct perpetrated by these Defendants.

## B. Procedural Background

Plaintiffs filed the Complaint in the United States District Court for the Western District of Michigan against all Defendants on December 1, 2023. The twelve-count Complaint alleged, First Amendment Retaliation (42 U.S.C. § 1983), Unconstitutional Conditions, Violation Of Due Process (42 U.S.C. § 1983), Conspiracy To Interfere With Civil Rights (42 U.S.C. § 1985), State Law Preemption By Michigan Liquor Control Code, State Law Preemption By Michigan Right To

15

Farm Act, Tortious Interference With A Business Relationship Or Expectancy Under State Law, Defamation Under State Law, Violation Of Michigan's Open Meetings Act (MCL 15.261 Et Seq.), Intentional Infliction Of Emotional Distress Under State Law, Civil Conspiracy. Pursuant to an agreement between the Parties, Plaintiffs amended the Complaint and filed the First Amended Complaint ("FAC") on February 16, 2024, alleging the same claims as in the Complaint. First Amnd. Compl., R. 20, Page ID# 264-338.

In response to the FAC, all Defendants filed Motions to Dismiss Pursuant to Fed R. Civ P. 12(b)(1) and 12(b)(6). Township/Kaba Mtn to Dismiss, R.25, Page ID# 592-602, Township/Kaba BIS Mtn to Dismiss, R.26, Page ID# 603-630. Plaintiffs timely responded to the Motion. Resp. to Mtn to Dismiss, R.30, Page ID# 670-715. Defendants replied timely. Reply to Mtn to Dismiss, R.32, Page ID# 768-782.

The Trial Court decided the Motion without oral argument on September 17, 2024. The Trial Court's Opinion & Order dismissed Plaintiffs' claims in their entirety and issued a Judgement dismissing the federal claims with prejudice. Opinion & Order, R.35, Page ID# 808-831, Judgement, R.36, Page ID# 832 On October 17, 2024, Plaintiffs filed a Notice of Appeal with this Court as to all issues. While on appeal Plaintiffs voluntarily dismissed Roxanne Seeber, Catherine Kaufman, Jennifer Jones-Newton, and Larry Nichols.

## C. Identification of Ruling for Review

Opinion & Order, R.35, Page ID# 808-831

Judgement, R.36, Page ID# 832

## IX.    <u>SUMMARY OF THE ARGUMENT</u>

The Trial Court erred in dismissing Plaintiffs' claims by misapplying the Rule 12(b)(6) standard and disregarding well-pleaded factual allegations establishing a plausible course of unconstitutional conduct by Comstock and KABA. Plaintiffs sufficiently alleged that the challenged actions were undertaken by officials with final policymaking authority, thereby supporting *Monell* liability against the municipal entities.

The Trial Court further erred in granting qualified immunity at the pleading stage, despite the fact-specific nature of the defense and the clearly established constitutional rights at issue. Plaintiffs' FAC detailed individual conduct and coordinated efforts that violated Plaintiffs' rights under the First and Fourteenth Amendments.

Plaintiffs also stated viable claims against the individual defendants and municipal entities including but not limited to First Amendment retaliation, due process violations, and civil conspiracy. These claims are grounded in specific factual allegations, not conclusory assertions.

Finally, the Trial Court abused its discretion by dismissing the case with prejudice. Plaintiffs were never given the opportunity to amend their Complaint under the court's direction, and the record does not support a finding that amendment would have been futile. Reversal is warranted.

## X.    LEGAL ARGUMENT

### A.    STANDARD OF REVIEW

#### 1.  Fed. R. Civ. P. 12(b)(1)

A motion under Rule 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction. See *Gould v. Pechiney Ugine Kuhlman & Trefimetaux*, 853 F.2d 445, 450 (6th Cir. 1988). Rule 12(b)(1) motions to dismiss generally come in two varieties: a facial attack or a factual attack. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. *Id*. A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss. *Id*. Where there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations. *Id*. When a factual attack raises a factual controversy, the Trial Court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist. *Id.* In its review, the Trial Court has wide discretion to allow affidavits, documents,

and even a limited evidentiary hearing to resolve jurisdictional facts. *Id*. (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

The Trial Court has failed to identify the basis for their Rule 12(b)(1) motion to dismiss as either a facial or factual attack. However, it appears that their arguments are presented as a facial attack. Accordingly, this Court should evaluate the merits of their claims as it pertains to subject-matter jurisdiction, in accordance with the applicability of Rule 12(b)(6), and *de novo* review is required.

### 2.  Fed. R. Civ P. 12(b)(6)

The Court reviews a district court's grant of a motion to dismiss de novo. *Majestic Bldg. Maint., Inc. v Huntington Bancshares, Inc.*, 864 F. 3d 455, 458 (6th Cir. 2017); *Lipman v Budish*, 974 F.3d 726, 740 (6th Cir. 2020). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Such a motion tests the legal sufficiency of the Plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the Plaintiffs [and] accept its allegations as true." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

As the Supreme Court has explained, "a Plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); see *LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the Plaintiffs must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that defendant is liable for the alleged misconduct." *Id*.

While the FAC need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference" [of the discrimination or harassment alleged]. *Iqbal*, 556 U.S. at 678, 679. For practical application purposes, "'plausibility' occupies that wide space between "possibility" and 'probability.'" *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inferences from the factual material stated in the complaint, the plausibility standard has been satisfied.

**3. Qualified Immunity Standard of Review**

This Court conducts a de novo review of whether qualified immunity is applicable. *Peterson v Heymes*, 931 F.3d 546, 553 (6th Cir. 2019).

**B.    THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFFS WERE NOT SEEKING A COURSE OF ACTION AGAINST COMSTOCK AND KABA.**

The FAC sufficiently alleged a *Monell* claim under 42 U.S.C. § 1983 by pleading facts that, taken as true, establish that the Comstock acted pursuant to an official policy, widespread custom, or practice that caused the deprivation of Plaintiffs' First Amendment rights, such that the Township itself—not just individual officials, may be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### 1. Plaintiffs Successfully Plead a *Monell* Claim Under the Federal Rules of Civil Procedure.

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not mandate the identification of precise legal theories or the use of technical labels. "As a general rule, a Plaintiff's complaint need not expressly plead legal theories; it is sufficient to plead factual allegations that can establish a viable theory." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). The federal rules require a Plaintiffs to plead facts sufficient to show his or her claim has substantive plausibility, but "they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 574 U.S. at 11.

No heightened pleading rule requires Plaintiffs seeking damages for violations of constitutional rights to invoke §1983 expressly in order to state a claim. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507

U. S. 163, 164 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability*").*

Here, the Trial court erred in its dismissal on the basis that a *Monell* claim was not expressly pleaded misconstrues the standard under Rule 12(b)(6). As the Supreme Court stated, "[a]s a general rule, a Plaintiff's complaint need not expressly plead legal theories; it is sufficient to plead factual allegations that can establish a viable theory." *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014). Thus, Plaintiffs were not required to expressly identify a *Monell* claim by name, as long as the factual allegations in the complaint are sufficient to establish *Monell* as a viable theory. The FAC satisfies this standard. It alleges that Comstock Township and KABA engaged in unconstitutional conduct that caused the deprivation of constitutional rights.

To the extent any uncertainty remains, the proper course is not dismissal but leave to amend. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave to amend a pleading when justice so requires."); see also 5 Wright & Miller, § 1219, at 277–78. Accordingly, Plaintiffs have stated a viable *Monell* claim. Dismissal was premature and contrary to governing federal standards.

### i. Plaintiffs Plausibly Alleged a Municipal Liability Claim for Monell Under § 1983.

In, *Monell* the Supreme Court held municipalities and other local government units were subject to the Civil Rights Act of 1871, 42 U.S.C. § 1983 et. al. 436 U.S. *Monell*, at 690 (1978).

This Court, applying *Monell*, stated that for to prevail in a § 1983 against a local government and/or municipality, "the Plaintiffs must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. Chattanooga,* 398 F.3d 426, 429 (2005). There are four avenue to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Id. (*citing *Pembaur v City of Cincinnati*, 475 U.S. 469, 480 (1986).

ii. **Plaintiffs Had Plead the Existence of Comstock's Illegal Policy or Customs Through Action Taken by Officials with Final Decision-Making Authority.**

Municipal liability attaches when Plaintiffs can establish that the alleged federal right violation occurred because of municipal policy or customs through the "actions taken by officials with final decision-making authority." See *Pembaur*, 475 U.S. at 483. A municipality is liable for an official's unconstitutional action only when the official is the one who has the "final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481.

Ordinarily, state and local law determine whether a municipal official has final policymaking authority, but the court may also look to "custom or usage having the force of law." See *Jones v. Clark Cnty.*, 959 F.3d 748, 762 (6th Cir. 2020); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *Jett*, 491 U.S. at 737. This includes state and local positive law such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom. *Jett*, 491 U.S. at 737. Importantly, final policymaking authority may be delegated. *Miller v Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (citing *Pembaur*, 988 F.2d at 655).

Under Michigan law a charter township, as in the case of Comstock, is to be governed by an elected Board of Trustees, which consist of: the Township Supervisor; the Township Clerk; the Township Treasurer; and four elected Trustees; and is vested with "[a]ll legislative authority and powers. Mich. Comp. Laws § 42.1(2).

The FAC plausibly alleges that Township officials retaliated against them for engaging in protected First Amendment speech. Following this speech, Plaintiffs faced a coordinated campaign of obstruction, delay, and adverse zoning and licensing decisions. The conduct raised in the FAC was not the result low-level municipal employee, rather, it was carried out by Township's most senior officials vested with final decision-making authority.

In doing so the FAC plausibly alleges a municipal liability claim under *Monell* by identifying unconstitutional conduct carried out by officials with final policymaking authority. These allegations are not based on isolated acts or respondent superior, but rather on a concerted and retaliatory course of action that reflects an official policy or custom. Thus, Plaintiffs established through municipal liability under *Monell*, through the action taken by official with final decision-making authority.

### iii. Plaintiffs Had Plead the Existence of Comstock's Illegal Policy or Custom Through a Custom of Tolerance or Acquiescence of Federal Rights Violations.

Plaintiffs have plausibly alleged municipal liability under the fourth avenue recognized in *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005). In order to prevail under this avenue, the Plaintiffs  must show (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429-30 (6th Cir. 2005).

The Amended Complaint sets forth a pattern of retaliatory conduct by multiple Township officials—zoning delays, permit denials, and public attacks—targeted at

Plaintiffs following their protected speech. This pattern was not isolated or spontaneous; it involved repeated violations across multiple decision-makers, persisted over time, and occurred with full awareness of the Township's senior leadership. Despite this knowledge, the Township failed to intervene, discipline, or correct its officials' conduct.

Such deliberate inaction amounts to tacit approval. The Township's consistent failure to address these constitutional violations supports an inference that its inaction was the product of custom, not oversight. This custom was the moving force behind the harm Plaintiffs suffered—namely, the loss of their business operations and suppression of their First Amendment rights. Accordingly, Plaintiffs have satisfied the elements for liability based on a policy of inaction.

### 2. The Plaintiffs Stated a Claim for Civil Conspiracy Under § 1983.

Plaintiffs set forth detailed factual allegations in their FAC to state a claim for civil conspiracy under § 1983. The standard for proving a § 1983 conspiracy claim is set forth in *Hooks v. Hooks, 771 F.2d 935* (6th Cir. 1985): A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial

objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Id*. at *943-44*

"It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Furthermore, this court has acknowledged that because "rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, . . . circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks* 229 F.3d 514, 528 (6th Cir. 2000) (alteration in original).

Applying these principles, Plaintiffs' FAC satisfies this burden. Plaintiffs FAC plausibly alleges the existence of a coordinated plan among Comstock, KABA, and named officials to retaliate against Plaintiffs for their protected speech, deny their land use approvals and building permits, and circumvent court orders mandating good-faith processing of their applications, and much more. Plaintiffs identify specific actors—Scott Hess, Jodi Stefforia, Patrick Hanna, Catherine Kaufman, Roxanne Seeber, and others—who each took part in this scheme by engaging in false public statements, manufacturing MLCC complaints, obstructing permit processing, and leveraging informal hearings and planning commission meetings to target Plaintiffs.

Moreover, Plaintiffs alleges a shared objective among Defendants to suppress his constitutionally protected speech and due process and to impede their ability to operate a lawful winery/cidery business. These allegations stated in the Plaintiffs' FAC go far beyond a formulaic recitation of a conspiracy claim. See *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Weberg v. Franks* 229 F.3d 514, 528 (6th Cir. 2000). They describe the who, what, when, and how, naming specific Defendants, identifying overt acts taken in furtherance of the conspiracy, and alleging that the collective course of conduct was motivated by animus toward Plaintiffs' constitutionally protected activities.

As the Supreme Court stated, "[a]s a general rule, a Plaintiffs' complaint need not expressly plead legal theories; it is sufficient to plead factual allegations that can establish a viable theory." *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014). Thus, Plaintiffs were not required to expressly identify a Conspiracy under § 1983 claim by name, as long as the factual allegations in the complaint are sufficient to establish it as a viable theory. The FAC satisfies this standard.

## C.    THE TRIAL COURT ERRED IN ITS ANALYSIS OF QUALIFIED IMMUNITY

### 1. Qualified Immunity Standard

28

Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]" *Rudd v. City of Norton Shores,* 977 F.3d 503, 512 (6th Cir. 2020) (citing 42 U.S.C. § 1983). Plaintiffs must allege two things: (1) that they suffered a "deprivation" of a constitutional right. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970), and (2) that the defendant acted "under color of" state law when inflicting this injury. See *Harcz v. Boucher*, 763 F.App'x 536, 540 (6th Cir. 2019). A defendant in a § 1983 suit acts under color of state law when he or she abuses the positive given to them by the State. *West v. Atkins*, 497 U.S. 42, 49-50 (1988). Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibility pursuant to state law. *Id.*

Qualified immunity may protect an official from Section 1983 liability if the official's conduct does not violate "clearly established" statutory or constitutional rights that a reasonable person would have known were in existence. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to determine whether a defendant is entitled to qualified immunity, the court performs a two-step analysis. *First*, the court must question whether the alleged facts "[t]aken in the light most favorable to the party asserting the injury…show [that] the officer's conduct violated a constitutional right[.] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *Second*, the court must decide

"whether the right was clearly established." *Id.* Although this approach may be appropriate in many cases, it is no longer mandatory, rather, district and circuit court judges are allowed the freedom to determine which prong of the immunity analysis to address first. *Pearson v Callahan,* 555 U.S. 223, 236-242 (2009).

To overcome an assertion of qualified immunity, a Plaintiffs must demonstrate that the constitutional right at issue was clearly established at the time of the alleged deprivation. *Saucier*, 533 U.S. at 201. The Supreme Court clarified, stating:

> [T]hat the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Thus, while it must be clear to the reasonable official that such acts would violate the Constitution, it is irrelevant what the individual official actually believed about the legality of his or her action. *Harlow*, 457 U.S. at 818-819; *Barton v. Norrod*, 106 F.3d 1289, 1293 (6th Cir. 1997) ("[W]hether an official is entitled to qualified immunity focuses on the objective reasonableness of the official's action.");

## 2. The Trial Court Erred in Grant a Motion to Dismiss on the Basis of Qualified Immunity.

Although the Plaintiffs ultimately bear the burden of showing that a defendant is not entitled to qualified immunity, that burden is not high at the 12(b)(6) stage. Reading the complaint in the light most favorable to the Plaintiffs, it need only be "plausible" that an official's acts violated a clearly established constitutional right. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011).

Despite qualified immunity being available at the motion to dismiss stage, "it is generally inappropriate…to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity" *Wesley v. Campbell,* 779 F.3d 421, 433-34 (6th Cir. 2015). Although an officer's "entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point," Vakilian, 335 F.3d at 516 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)), that point is usually summary judgment and not dismissal under Rule 12. See *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005); see also *Bazzi v. City of Dearborn*, 658 F.3d 598 (6th Cir. 2011); *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) ("[Q]ualified immunity is typically addressed at the summary judgment stage of the case."); *Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008) ("[T]he standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may

be granted, [and] dismissal of Appellants on the basis of qualified immunity is premature.").

"Qualified immunity is a question of law, but 'where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.'" McKenna v. Edgell, 617 F.3d 432, 437 (6th Cir. 2010) (quoting Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900 (6th Cir. 2004)).

As stated above, if there is disagreement about the facts the court must review the evidence in the light most favorable to the Plaintiffs. Dismissal is inappropriate where, as here, the Plaintiffs had plausibly alleged a constitutional violation and provided sufficient factual content to allow a court to infer that the conduct, as alleged, violated clearly established law. Because the qualified immunity defense often turns on disputed facts, such as what the official knew, what motivated the conduct, and the specific circumstances surrounding the alleged constitutional violation resolution of the issue at the pleading stage improperly deprives Plaintiffs of the opportunity to develop their claims through discovery

Here, the Defendants seek to invoke qualified immunity even though Plaintiffs' allegations, taken as true, describe a pattern of conduct that includes violations of clearly established rights under the First, Forth, and Fourteenth

Amendments. Accordingly, dismissal under Rule 12(b)(6) is premature and improper.

### 3. Plaintiffs Pleaded Individualized Conduct Sufficient to Assess Qualified Immunity.

The Court erred in finding that the First Amended Complaint failed to allege specific conduct by each Defendant. See ECF No. 39, PageID.827. In fact, the Complaint details numerous individualized acts—anchored in specific dates, communications, and decisions—linking each Defendant to First Amendment retaliation and due process violations. These non-conclusory allegations are identified in paragraphs including, but not limited to: ¶68, ¶99, ¶105-106, ¶107, 108, ¶110, ¶111, 119, ¶129-133, ¶134-139, ¶180, ¶207, ¶266, ¶147-148, ¶150-153, ¶186, ¶188, ¶191-193, ¶206, ¶213, ¶236, ¶259, ¶260, ¶264, ¶265, ¶267, ¶268, ¶270, ¶272, ¶273. First Amnd. Compl., R. 20, Page ID# 264-338.

These are not generalized assertions. Each is an individualized, plausible allegation that ties a specific official to unconstitutional conduct and tie each Defendant to discrete violations of Plaintiffs' constitutional rights.

Furthermore, the Trial Court's strict interpretation of the manner in which qualified immunity must be assessed in the context of each individual's conduct is inconsistent with controlling precedent. Even in *Hopper v. Plummer*, *supra*, a decision cited by the Trial Court itself, this court did not apply such a rigid standard.

In *Hopper*, the court affirmed the sufficiency of allegations where the district court referred to "those on the scene" and grouped multiple defendants together when assessing their knowledge and participation in the constitutional violation. *Hopper* 877 F.3d 744. This Court made it clear it is permissible to draw reasonable inferences from surrounding facts, proximity, and context to establish each defendant's involvement. Also, this Court rejected the argument that individualized analysis under qualified immunity requires identifying, at each moment in time, what each individual officer saw or heard. *Id.*

Moreover, the Trial Court misapplied the qualified immunity framework by imposing an overly rigid standard of individualized conduct inconsistent with controlling. Even in *Hopper v. Plummer*, 887 F.3d 744 (6th Cir. 2018), the very case cited by the Trial Court, this Court upheld the sufficiency of allegations referencing collective conduct by those on the scene. The Court emphasized that it is proper to draw reasonable inferences from surrounding facts, proximity, and context when assessing each defendant's involvement. *Id.* at 755. It expressly rejected the notion that a plaintiff must allege, at each moment, exactly what each official saw or heard. Here, Plaintiffs alleged far more specific conduct than the collective references allowed in *Hopper* tied to specific individuals, dates, and consequences.

The Trial Court erred by imposed this strict interpretation of qualified immunity assessment on Plaintiffs' conspiracy claims under § 1983 and § 1985, such

34

application misstates the law. Civil conspiracy under § 1983 is doctrinally distinct from direct § 1983 claims and does not require individualized conduct allegations subject to qualified immunity analysis. Nor do § 1985(3) claims require such individualization. See Hopper, supra; Robertson v. Lucas, 753 F.3d 606, 615 (6th Cir. 2014).

By collapsing the standards for direct § 1983 claims and conspiracy claims under §§ 1983 and 1985 into a single individualized pleading requirement, the Trial Court applied an erroneous legal framework. This departure from precedent resulted in the improper dismissal of claims that were pleaded with more specificity than those routinely upheld by this Court.

Should the Court determine that the FAC's allegations are insufficient to establish individualized conduct, Plaintiff request leave to amend their pleading. The FAC was filed pursuant to the parties' mutual stipulations, not under the direction of the Court. Under Federal Rules of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."

## D.    PLAINTIFFS ASSERTS VIABLE CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS AND MUNICIPAL ENTITIES AND DEMENDS THEY BE ADJUDIACTED.

As set forth above and below, the FCA states viable claims against both the individuals in their personal capacities and the municipal entities under 42 U.S.C. § 1983 and § 1985. Plaintiffs assert *Monell* claims against Comstock and KABA,

alleging that these violations were the result of official policies, customs, the actions of final decision-makers, Civil Conspiracy, and *inter alia*. Accordingly, Plaintiffs seek relief for the following against all named parties:

## 1. Plaintiffs' First Amendment Retaliation Claims

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. Amend. I.   To succeed on a First Amendment retaliation claim, a Plaintiffs must first make shown that; (1) the Plaintiffs engaged in constitutionally protected speech (2) an adverse action was taken against the Plaintiffs that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) the adverse action was motivated at least in part by the Plaintiffs' protected conduct. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

## i.   The Plaintiffs Constitutionally Protected Conduct.

Speech at the core of First Amendment protections includes public commentary on government affairs, criticism of official misconduct, and advocacy on matters of public concern. The Supreme Court has emphasized that "[s]peech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983).

The speech alleged in the FAC falls squarely within these protections. Plaintiffs publicly criticized Comstock, KABA, and several other defendants. These criticisms addressed matters of public concern, including zoning decisions, licensing

delays, and abuse of authority. Speech involving commentary on government misconduct and public concern is at the core of First Amendment protection. *See Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207 (2011); *Connick* v. *Myers*, 461 U.S. 138, 145, 103 S. Ct. 1684 (1983).

Although the First Amendment is not absolute and excludes certain categories of speech (e.g., true threats, incitement, obscenity), see *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 (1961). Plaintiffs' speech does not fall within any of these exceptions. However, Plaintiffs speech may be interpreted by officials, they are protected expressions of opinion and political dissent. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas* v. *Johnson*, 491 U.S. 397, 414, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989). Accordingly, Plaintiffs have adequately alleged that they engaged in constitutionally protected conduct, satisfying the first prong.

## ii. An Adverse Action Was Taken Against the Plaintiffs That Would Deter a Person of Ordinary Firmness from Continuing to Engage in That Conduct.

To satisfy the second prong the Plaintiffs must show that government officials took an action against that would "deter a person of ordinary firmness from continuing to engage in that conduct." *Myers v. Centerville*, 41 F.4th 746, 759 (6th Cir. 2022). The threshold is not unduly demanding; even a minor reprisal may suffice

if it is the product of retaliatory animus and would chill protected expression. See

*Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999).

The FAC plausibly alleges that Township officials took materially adverse actions against Plaintiffs in direct response to their constitutionally protected speech. Specifically, Plaintiffs alleged that in response to his protected speech faced, contained in the FAC by document paragraph not limited to, *inter alia*: ¶68, ¶99, ¶105-106, ¶107, 108, ¶110, ¶111, 119, ¶129-133, ¶134-139, ¶180, ¶207, ¶266, ¶147. First Amnd. Compl., R. 20, Page ID# 264-338.

Collectively, these adverse actions constitute more than bureaucratic foot-dragging or minor inconveniences. They represent a deliberate misuse of governmental authority to frustrate Plaintiffs' property rights, sabotage their lawful business operations, and punish them for speaking out against municipal misconduct. Accordingly, Plaintiffs have plausibly alleged the second prong.

### iii.    The Adverse Action Was Motivated at Least in Part by the Plaintiffs' Protected Conduct.

The Plaintiffs meets the third prong of a First Amendment retaliation claim because the adverse action was motivated at least in part by the Plaintiffs' protected conduct. *See Myers v. Centerville*, 41 F.4th 746, 759 (6th Cir. 2022) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). This Court articulated that this is a two part inquiry: (1) whether "the adverse action was proximately caused

by an individual defendant's acts," and (2) whether "the individual taking those acts was motivated . . . by a desire to punish [the Plaintiffs] for the exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012)

Plaintiffs meet both components of this test. The FAC alleges a causal link between Plaintiffs' protected speech and the adverse actions taken by Township officials. The retaliatory campaign allegedly began immediately after Plaintiffs refused Supervisor Thompson's demand to remove critical Facebook posts. The Complaint asserts that Township officials, acting in coordination and in close temporal proximity to the speech, initiated enforcement and various obstacles for the Plaintiffs. The temporal proximity and direct expressions of hostility toward protected speech can support an inference of retaliatory motive. Accordingly, the Amended Complaint plausibly alleges that adverse government action was in proximately cause, thus showing that the Plaintiffs had satisfied all three prongs and establishing a prima facie case.

## 2. Plaintiffs had Adequately Pleaded a Substantive Due Process Violation Based on Arbitrary and Conscience-Shocking Conduct

The Fourteenth Amendment's Due Process Clause prohibits "any State" from "depriving any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due process clause has both procedural and substantive components, *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)

Substantive due process is "the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). It protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that "shock the conscience." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003).

One aspect of substantive due process is the right to be free of "arbitrary and capricious" action by government actors. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). In *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708 (1998), the Supreme Court discussed at length how the "substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." 523 U.S. at 847 (internal quotations and citation omitted). In other words, the "arbitrary and capricious" standard set forth in *Pearson* is simply another formulation of, but is no less stringent than, the more traditional "shocks the conscience" standard. *Id*.

The Sixth Circuit Courts case law on substantive due process is conditional as to whether it requires an underlying constitutionally-protected right in order for a government action to violate one's rights by shocking the conscience. *EJS Props*.,

698 F.3d at 861-62. For example, in the context of zoning decisions, our cases hold that government action will not shock the conscience unless it touches on a protectable interest, but in other contexts we have held that, "government action may certainly shock the conscience or violate substantive due process without a liberty or property interest at stake." *Id*. Under either formulation, we acknowledge that "substantive due process is not a rigid conception, nor does it offer recourse for every wrongful action taken by the government" and that the "shocks the conscience" standard sets a high bar: "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *EJS Props.*, 698 F.3d. at 862 (internal quotation marks omitted).

Over the years, the courts have used several tropes to explain what it means to shock the conscience. *Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846-47, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)*. Conduct shocks the conscience if it "violates the 'decencies of civilized conduct.'" *Id*. at 846 (quoting *Rochin v. California*, 342 U.S. 165, 172-73, 72 S. Ct. 205, 96 L. Ed. 183 (1952)). Such conduct includes actions "so 'brutal' and 'offensive' that they do not comport with traditional ideas of fair play and decency." *Id*. at 847 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S. Ct. 408 (1957)). These are subjective standards, to be sure, but they make clear that the "shocks the conscience" standard is not a font of tort law but is instead a way

to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation. *See id*. at 847-48.

Our cases recognize the difficulty of determining where conscience-shocking behavior resides on the continuum of actions. The bookends present the easier cases. Merely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is "intended to injure" without any justifiable government interest, most clearly rises to the "conscience-shocking" level. *Id*. at 848-49.

    i.    **Substantive Due Process Violations During Informal Hearing**

Plaintiffs allege that the conduct surrounding the informal hearing—specifically the actions of Comstock and its attorneys, rises to the level of conscience-shocking behavior prohibited by the Due Process Clause of the Fourteenth Amendment.

Michigan law explicitly prohibits legal representation at an informal hearing, such as the one relevant to this matter. Despite clear prohibition under MCL 600.8719, the townships attorneys appeared on behalf of the Township and submitted a pre-written, judicially formatted order far exceeding the scope of the original zoning citation.

This was not a mere technical violation or procedural irregularity. The hearing was designed to address a minor zoning citation carrying a $25 fine. Instead,

Defendants turned it into an ambush proceeding where the defendants used this expansive judicial order shut down the majority of Soil Friends' lawful agricultural business activities including but not limited to, *inter alia:* food, alcohol and music inside the barn, food, alcohol and music outside the barn, the sale of crops grown on the property, the sale of Christmas trees,  the sale of chicken eggs, farm tours, kids' pictures with Santa Claus, hayrides, you-pick sales and numerous other common farm activities. This expansive judicial order violated statutory authority, violated procedural norms, and was imposed at a hearing where Plaintiffs were unrepresented and unaware of the far-reaching implications.

The result was not merely regulatory overreach, it was a deprivation of Plaintiffs' ability to operate their business, secured without notice, hearing, or representation, and in contraction of explicit state law. This was not mere negligence. It was a deliberate and premeditated act by a government entity and its legal representative to deprive Plaintiffs of their rights, absent any legitimate governmental interest or valid legal process. Such conduct, which resulted in the closure of a functioning agricultural enterprise without any meaningful due process, falls squarely within the scope of conscience-shocking government behavior prohibiting the Circuit Courts precedent. The Conduct shocks the conscience and demands redress under the Fourteenth Amendment.

### ii.    Substantive Due Process Violations for Plaintiffs' Interest in the Red Barn

Plaintiffs further allege that the due process violation surrounding the Plaintiffs' zoning issues, rises to the level of conscience-shocking behavior prohibited by the Due Process Clause of the Fourteenth Amendment.

In the zoning context, a viable substantive due process claim first requires a protectable property interest. *See Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031 (6th Cir. 1992). The Sixth Circuit has held that such an interest exists where government officials lack discretion to deny land use approval once mandatory criteria are satisfied. See *G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328 (6th Cir. 1990). Additionally, "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Pearson*, 961 F.2d at 1217.

Here, Plaintiffs allege that they fully complied with all mandatory zoning criteria established under Comstock's ordinances. Such compliance rendered the Township's approval of their special use permits and associated building applications ministerial, not discretionary.

Despite Plaintiffs' compliance, the Township and KABA officials failed to act in accordance with law. Instead of neutrally applying existing zoning ordinances, Defendants delayed the processing of applications, removed agenda items without

justification, issued spurious citations, and imposed conditions wholly untethered to any objective zoning standards. These deviations were the product of arbitrary governance and, as Plaintiffs allege, retaliatory motive stemming from Plaintiffs' protected speech and expressive conduct.

The Sixth Circuit has long recognized that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). In the present case, Defendants' conduct goes far beyond ordinary land use disputes. Township officials are alleged to have intentionally delayed or blocked otherwise approvable land use requests, to have leveraged minor ordinance issues into opportunities to restrict Plaintiffs' operations, and to have used governmental authority not to enforce the law, but to punish disfavored individuals.

These actions were not grounded in any legitimate land use rationale, nor did they serve a bona fide governmental interest. Rather, Plaintiffs allege a pattern of retaliatory obstruction and intentional economic harm, cloaked in administrative formality, without adequate legal justification. This conduct, particularly considering Plaintiffs' compliance, represents the type of bad-faith governance that substantive due process doctrine is designed to prevent. These allegations, taken as true, depict conduct that is both arbitrary and conscience-shocking.

### 3. Plaintiffs Have Adequately Pleaded a Procedural Due Process Violation Based on Arbitrary and Conscience-Shocking Conduct

Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. Procedural due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner" if the State seeks to deprive someone of constitutionally protected liberty or property interests. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187 (1965). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593 (1972).

To succeed on a procedural-due-process claim, a Plaintiffs must establish "two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955 (2023).

The Supreme Court has often held, that property interests are not created by the Constitution. Rather, they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972). A Plaintiffs had a property interest in a benefit if they have a "legitimate claim of entitlement to it,"

rather than merely "an abstract need or desire for it" or a "unilateral expectation of it." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008). Plaintiffs had a liberty interest in a benefit if they have a "justifiable expectation" of it. *G.M. Engineers & Assocs., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 331 (6th Cir. 1990) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S. Ct. 1741 (1983)).

Here, Plaintiffs have plausibly alleged the existence of such a property interest. They assert that their agricultural and agritourism activities, including but not limited to seasonal events, crop sales, and public programming, were conducted in accordance with Comstock's zoning ordinances. Plaintiffs further allege that they submitted the requisite applications for permits, complied with all applicable criteria, and in some cases obtained prior approvals. Under such circumstances, Michigan law and specifically the Township's zoning framework afforded Plaintiffs a legitimate claim of entitlement and expectation in the continued operation of their business activities, not merely unilateral expectation or an abstract need or desire for it.

Additionally, the Supreme Court has repeatedly recognized that an individual's interest in the means by which they earn their livelihood constitutes one of the most significant forms of property protected by the Due Process Clause. See *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988). In the present case, the property at issue, Plaintiffs' right to operate Soil Friends as an

agricultural and agritourism business represents not merely real property but Plaintiffs' primary source of income and livelihood.

Thus, due to fact the Plaintiffs had a legitimate claim of entitlement to property use and that it is his livelihood, Plaintiffs had established a property interest.

### i.    Procedural Due Process Violations During Informal Hearing

The United States Supreme Court has stated that the essence of due process is notice and an opportunity to be heard: "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo* [1965], 380 U.S. 545, 552." *Fuentes v. Shevin* (1972), 407 U.S. 67, 80. See, also, *Mathews v. Eldridge* (1976), 424 U.S. 319, 333.

On March 31, 2023, at what was noticed as an informal hearing for a minor infraction, Comstock appeared through counsel, despite MCL 600.8719 prohibiting attorney representation at such hearings, and submitted a pre-drafted order that the magistrate adopted. This order, far exceeding the scope of the alleged infraction, effectively shut down Soil Friends' core business activities: public events, sales of farm products, hayrides, and seasonal operations.

Plaintiffs were unrepresented, unaware of the Township's intentions, and denied a meaningful opportunity to respond. This violated both Michigan law and the federal constitutional standard requiring notice and a fair hearing. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Government actors cannot use informal proceedings as backdoor mechanisms to impose sweeping penalties without process.

Plaintiffs have therefore stated a plausible procedural due process claim. Plaintiffs had alleged that they have a Property interest and that the Township's conduct of bypassed lawful procedures, is failed of state procedure.

ii.   **Defendants' Final Decision Regarding the Red Barn Was Not Based Solely on Legal Rules and Evidence, But on Retaliatory Animus and Bias.**

Fundamental to the guarantee of procedural due process is the requirement that adjudicative decisions affecting protected property interests must be rendered by a neutral decisionmaker based solely on the legal standards and evidentiary record developed at the hearing. As the Supreme Court has made clear the decisionmaker's conclusion must rest solely on the legal rules and evidence adduced at the hearing. *Ohio Bell Tel. Co*. v. *PUC*, 301 U.S. 292 (1937); *United States* v. *Abilene & S. R. Co.*, 265 U.S. 274, 288-289 (1924). To demonstrate compliance with this requirement, the decision maker should state the reasons for his determination and

indicate the evidence he relied on, cf. *Wichita R. & Light Co*. v. *PUC*, 260 U.S. 48, 57-59 (1922), though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law. And, of course, an impartial decision maker is essential. Cf. *In re Murchison*, 349 U.S. 133 (1955); *Wong Yang Sung* v. *McGrath*, 339 U.S. 33, 45-46 (1950).

The process afforded to Plaintiffs in the present matter fell far short of these basic constitutional standards. Plaintiffs were not given a meaningful opportunity to present or rebut their case; nor did the Township or the presiding official articulate findings grounded in the record or law. Instead, Plaintiffs allege that the expansive restrictions imposed on the Red Barn were driven by impermissible motives, including personal animus and retaliation for Plaintiffs' exercise of protected First Amendment speech. Specifically, Plaintiffs' public commentary and advocacy regarding Township governance preceded an abrupt shift in the treatment of their land-use applications and the judicial order secured at the informal hearing.

This conduct strikes at the core of procedural due process. The Constitution requires not only that a person be heard, but that they be heard by an impartial decision maker. Here, the Township's actions, relying on a hearing process that lacked legal structure, denied Plaintiffs legal representation, and concluded with a pre-drafted, overbroad order, reflect a process infected by bias and punitive intent, not one governed by neutral application of zoning laws or objective standards. The

failure to base the deprivation on evidence and legal rules, coupled with clear indications of viewpoint-based animus, renders the process constitutionally infirm.

## 4. Plaintiffs Have Adequately Plead Due Process and Regulatory Taking Claims.

Plaintiffs further alleges that the defendants action have committed (1) a taking without just compensation under the Fifth Amendment Takings Clause; and (2) a taking that destroyed the value of the Property to such an extent that it amounts to a taking by eminent domain without due process of law.

The Takings Clause of the Fifth Amendment, made applicable to state governments through the Fourteenth Amendment, provides that "private property shall not 'be taken for public use, without just compensation." *Murr v. Wisconsin*, 582 U.S. 383, 392, 137 S. Ct. 1933, 198 L. Ed. 2d 497 (2017) (internal quotations and citations omitted). A "regulatory taking" concerns land-use regulations. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123-24, 98 S. Ct. 2646 (1978) (quoting *Armstrong v. U.S.*, 364 U.S. 40, 49, 80 S. Ct. 1563 (1960)). Similarly, a due process takings action "exists where a zoning regulation destroys the value of the Plaintiffs' property so that it 'amounts to a taking by eminent domain without due process of law.'" *Tri-Corp Management Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002) (quoting *Pearson*, 961 F.2d at 1215-16). "[A] governmental entity violates due process and creates a due process takings claim

only when its regulation is equivalent to an appropriation of property through eminent domain or physical possession." *Id.*

### i.    Due Process Takings Claim.

In recognizing a claim for a due process taking, the *Pearson* opinion relied heavily on the discussion of different classes of federal zoning claims laid out in *Eide v. Sarasota County*, 908 F.2d 716, 720-22 (11th Cir. 1990). *Pearson*, 961 F.2d at 1215 n.12. According to *Pearson*, a due process takings claim exists where a zoning regulation destroys the value of the Plaintiffs' property so that it "amounts to a taking by eminent domain without due process of law." *Pearson*, 961 F.2d at 1215-16; *Eide*, 908 F.2d at 721.

The due process takings claim has its origin in a passage of the Supreme Court's decision in *Pennsylvania Coal Co. v. Mahon*, where Justice Holmes stated that "the general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." 260 U.S. 393, 415, 43 S. Ct. 158 (1922).

A due process takings claim "exists where a zoning regulation destroys the value of the Plaintiffs' property so that it 'amounts to a taking by eminent domain without due process of law.'" *Tri-Corp Management Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002). According to the Sixth Circuit, "a governmental entity violates due process and creates a due process takings claim only when its

regulation is equivalent to an appropriation of property through eminent domain or physical possession." *Id.* Accordingly, this is the same standard under just compensation taking.

### ii. Just Compensation Taking Compensation.

The Takings Clause of the Fifth Amendment, made applicable to state governments through the Fourteenth Amendment, provides that private property shall not be taken for public use, without just compensation. U.S. Const. amend. V. Although typically taking requiring just compensation is a direct government appropriation or physical invasion of private property, the Supreme Court has recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster' so as to effect a regulatory taking." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005)).

Regulatory takings claims generally fall into two categories. A total regulatory taking is one that allows the property owner "*no* productive or economically beneficial use of land" and entitles the property owner to just compensation under the Fifth Amendment. *Lucas*, 505 U.S. at 1019). A partial (or non-categorical) regulatory taking is a less intrusive regulation that prevents the property owner from some, but not all, economic use of his land. *Id.* Such an action may still require compensation depending on the level of governmental

intrusion. *See Anderson v. Charter Twp. of Ypsilanti, 266 F.3d 487, 493 (6th Cir. 2001).*

The case in the present matte deals with the latter. The Court's inquiry focuses "upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Lingle*, 544 U.S. at 540. "[C]ourts employ an 'ad hoc, factual inquiry' into three significant factors" when a party alleges the presence of a partial taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Coalition for Gov't Procurement*, 365 F.3d 435 (6th Cir. 2004) (citing *Raceway Park, Inc. v. Ohio*, 356 F.3d 677 (6th Cir. 2004), and *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646 (1978).

**(1) The Economic Impact of the Regulation on the Claimant.**

The Supreme Court has consistently emphasized that the severity of economic loss is a critical consideration in regulatory takings analysis. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646 (1978).  To assess the first *Penn Central* factor—economic impact—courts "compare the value that has been taken from the property with the value that remains in the property[.]" K*eystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497, 107 S. Ct. 1232 (1987). Here, Plaintiffs have alleged that Comstock's actions including the issuance of a

sweeping, judicially enforced prohibition on agritourism activities, sales, and events, have effectively eliminated the economic core of the property's function. These were not peripheral activities, they were the primary income-producing functions of the land. Scrutiny

## (2) The Extent to Which the Regulation has Interfered with Distinct Investment-Backed Expectations.

To meet the second Penn Central factor, "[a] 'reasonable investment-backed expectation' must be more than a 'unilateral expectation or an abstract need.'". *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005-06, 104 S. Ct. 2862 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S. Ct. 446 (1980)).

Here, Plaintiffs assert that they undertook substantial investments and operational development based on prior approvals, permits, and communications from the Township. These included building improvements, infrastructure for hosting public events, and the development of agritourism programming. Moreover, Plaintiffs' reliance was not speculative or premature their land-use was ongoing and lawfully established before the Township abruptly reversed course. When a landowner has relied in good faith on local government decisions, especially those approving specific uses or building plans, courts recognize a protected property interest and a reasonable expectation of continued operation.

## (3) The Character of the Governmental Action.

The final Penn Central factor is concerned with "character of the governmental action"—requires the Court to look at whether the challenged action: (i) "can be characterized as a physical invasion by government," or (ii) or "lacks a legitimate public purpose." *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009).

Here, Plaintiffs allege that Comstock's actions were not to the purpose of pursuing a public purpose, but rather a targeted campaign of obstruction, retribution, and suppression of Plaintiffs' constitutionally protected expression and economic activities. As is held by the Supreme Court in *Kelo v. City of New London*, the taking must be tied to a legitimate public purpose in order to withstand constitutional scrutiny under the Takings Clause. 545 U.S. 469, 477–78 (2005).

To the contrary, the Township's conduct appears detached from any coherent public policy or land-use rationale. Plaintiffs assert that Township officials repeatedly refused to process zoning applications that satisfied all ordinance requirements, removed agenda items without explanation, and used an informal civil infraction hearing to secure a sweeping judicial order—outside the scope of the hearing—effectively shuttering their agricultural and agritourism operations. These actions were allegedly driven not by any legitimate public welfare concern, but by improper motives including retaliation for Plaintiffs' protected speech, bias against their business model, or political animus.

Thus, under all three *Penn Central* factors, Plaintiffs have plausibly alleged a regulatory taking that is both economically devastating, disruptive of justified reliance, and administratively arbitrary. Accordingly, their claim for just compensation under the Takings Clause of the Fifth and Fourteenth Amendments is not only viable but strongly grounded in constitutional doctrine. Defendants' motion to dismiss this count should be denied.

## E.    THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS WITH PREJUDICE.

The Court 6th Circuit Courts reviews a district court's determination to dismiss with prejudice under an abuse of discretion standard. *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005). Dismissal with prejudice and without leave to amend is only appropriate when it is clear on de novo review that the complaint could not be saved by an amendment. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015).

The district court here dismissed Plaintiffs' claims with prejudice despite the fact that Plaintiffs never had an opportunity to amend under the Court's direction. The FAC was filed pursuant to a stipulated extension between the parties, not as a court order.  Plaintiffs were never put on notice of any specific deficiencies and were never granted leave to cure any perceived defects.

This stands in contrast to cases the Trial Court cited where dismissal with prejudice was affirmed because the Plaintiffs had already been afforded multiple chances to amend or failed to explain how amendment would cure defects. For example, in *Newberry*, the Plaintiffs failed to explain how the proposed claims would have survived dismissal. 789 F.3d at 645–46. Similarly, in *Craighead v. E.F. Hutton & Co.*, dismissal with prejudice was upheld after the Plaintiffs had ample opportunities to amend and failed to allege a viable claim. 899 F.2d 485, 496 (6th Cir. 1990).

To the contrary, Plaintiffs have identified substantial, detailed factual allegations supporting their constitutional claims under the First, Fifth and Fourteenth Amendments. If the Court finds any aspect of the Complaint deficient, amendment would not be futile and would allow Plaintiffs to clarify or expand specific allegations regarding individual conduct, causation, or municipal liability.

Accordingly, because it is not "clear on de novo review" that amendment would be futile and because Plaintiffs were never afforded a meaningful opportunity to amend, the Trail Court abused its discretion in dismissing the case with prejudice.

## XI.    CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court: (1) Reverse the district court's Opinion and Order; (2) Remand this case for further proceedings on the merits; (3) In the alternative, remand with instructions to permit

Plaintiffs eave to amend their complaint pursuant to Rule 15(a)(2); and (4) Grant

such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Dated July 25, 2025 /s/ Steven J. Kustra

Corrected August 1, 2025 By: Steven J. Kustra (P79002)

KUSTRA & BLOOM PLC

Steven J. Kustra (P79002)

21002 Mack Avenue

Grosse Pointe Woods, MI 48236

(313) 586-4444

skustra@kustrabloom.com

*Attorneys for Plaintiffs*

## XII.  <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the Federal Appellate Rules of Procedure

because excluding the parts of the document exempted this document contains

12,854 words. Additionally, this document complies with the typeface and type

style requirements of said Rules because this document has been prepared in a

proportionally spaced type phasing using Times New Roman in 14 font.

/s/ Steven J. Kustra, Esq.

## XIII.  <u>CERTIFICATE OF SERVICE</u>

I certify that on July 25, 2025, I electronically filed the foregoing

document(s) and that they are available for viewing and downloading from the

Court's CM/ECF system, and that all participants in the case are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Steven J. Kustra, Esq.

# XIV.  <u>ADDENDUM</u>

3.  First Amnd. Compl., R. 20, Page ID# 264-338

4.  FAC Exhibit 1, R. 20-1, Page ID# 339-340

5.  FAC Exhibit 2, R. 20-2, Page ID# 341-342

6.  FAC Exhibit 3, R. 20-3, Page ID# 343-344

7.  FAC Exhibit 4, R. 20-4, Page ID# 345-346

8.  FAC Exhibit 5, R. 20-5, Page ID# 347-351

9.  FAC Exhibit 6, R. 20-6, Page ID# 352-354

10. FAC Exhibit 7, R. 20-7, Page ID# 355-356

11. FAC Exhibit 8, R. 20-8, Page ID# 357-358

12. FAC Exhibit 9, R. 20-9, Page ID# 359-360

13. FAC Exhibit 10, R. 20-10, Page ID# 361-369

14. FAC Exhibit 11, R. 20-11, Page ID# 370-374

15. FAC Exhibit 12, R. 20-12, Page ID# 375-377

16. FAC Exhibit 13, R. 20-13, Page 378-383

17. FAC Exhibit 14, R. 20-14, Page ID# 384-391

18. FAC Exhibit 15, R. 20-15, Page ID# 392-393

19. FAC Exhibit 16, R. 20-16, Page ID# 394-415

20. FAC Exhibit 17, R. 20-17, Page ID# 416-420

21. FAC Exhibit18, R. 20-18, Page ID# 421-427

22. FAC Exhibit 19, R. 20-19, Page ID# 428-437

23. FAC Exhibit 20, R. 20-20, Page ID# 438-439

24. FAC Exhibit 21, R. 20-21, Page ID# 440-450

25. FAC Exhibit 22, R. 20-22, Page ID# 451-452

26. FAC Exhibit 23, R.20-23, Page ID# 453-462

27. Atty Mtn to Dismiss, R. 23-8, Page ID# 574-580

28. Township/Kaba Mtn to Dismiss, R.25, Page ID# 592-602

29. Township/Kaba BIS Mtn to Dismiss, R.26, Page ID# 603-630

30. Index of Exhibits Township/Kaba BIS Mtn to Dismiss, R.26-1, Page ID# 631

31. Exhibit A Township/Kaba BIS Mtn to Dismiss, R.26-2, Page ID# 632-633

32. Exhibit B Township/Kaba BIS Mtn to Dismiss, R.26-3, Page ID# 634-638

33. Exhibit C Township/Kaba BIS Mtn to Dismiss, R.26-4, Page ID# 639-652

34. Exhibit D Township/Kaba BIS Mtn to Dismiss, R.26-5, Page ID# 653-658

35. Resp. to Mtn to Dismiss, R.30, Page ID# 670-715

36. Reply to Mtn to Dismiss, R.32, Page ID# 768-782

37. Opinion & Order, R.35, Page ID# 808-831

38. Judgement, R.36, Page ID# 832.