Case No. 24-1925

---

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

---

**SOIL FRIENDS, LLC**, a Michigan limited liability company; **BENJAMIN MARTIN**, an individual; and **SARA MARTIN**, an individual,

Plaintiffs – Appellants

v.

**CHARTER TOWNSHIP OF COMSTOCK**, MI, a Michigan municipal corporation; **KALAMAZOO, MI AREA BUILDING AUTHORITY**, a Michigan municipal corporation or agent of Comstock Charter Township; **JODI STEFFORIA**, individual; **RANDY THOMPSON**, individual; **SCOTT HESS**, individual; **MATTHEW MILLER**, individual; **RON SPORTEL**, individual; **ALLAN FAUST**, individual; **JEFF AMPEY**, individual; individual; **PATRICK HANNA**, individual; **CLYDE SHERWOOD, III**, individual; **MIKE ALWINE**, individual

Defendants – Appellees

---

On Appeal from the
United States District Court for the Western District of Michigan

---

### RESPONSE BRIEF OF APPELLEES CHARTER TOWNSHIP OF COMSTOCK, KALAMAZOO, MI AREA BUILDING AUTHORITY, JODI STEFFORIA, RANDY THOMPSON, SCOTT HESS, MATTHEW MILLER, RON SPORTEL, ALLAN FAUST, JEFF AMPEY, PATRICK HANNA, CLYDE SHERWOOD, III and MIKE ALWINE

### ***ORAL ARGUMENT REQUESTED***

Respectfully submitted by:

**STRAUB, SEAMAN & ALLEN, P.C.**
JAMES T. MCGOVERN (P79410)
Counsel for Comstock Township and KABA
1014 Main Street, P.O. Box 318
St. Joseph, MI  49085
(269) 982-1600
jmcgovern@lawssa.com

## CORPORATE DISCLOSURE

Under Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Defendant-Appellees certifies that no party to this appeal is a subsidiary or affiliate of a publicly-owned corporation; no publicly-owned corporation that is not a party to this appeal has a financial interest in the outcome.

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iii

Statement in Support of Oral Argument ....................................................................... iv

Statement of Jurisdiction ................................................................................................1

Statement of Issues ........................................................................................................3

Statement of the Case ....................................................................................................4

Summary of the Argument ...........................................................................................16

Argument ......................................................................................................................17

    I.     The District Court Correctly Ruled That Qualified Immunity Barred Plaintiffs' Claims ...............................................................................................................17

    II.    Plaintiffs Failed To Properly Bring Claims Against Comstock Township And The KABA .................................................................................................................23

    III.   The District Court Did Not Abuse Its Discretion In Dismissing Plaintffs' Federal Claims With Prejudice ......................................................................................28

Conclusion ...................................................................................................................30

Certificate of Compliance ...........................................................................................30

Certificate of Service ...................................................................................................31

Addendum ....................................................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987) .................................................... 18, 20, 21

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ........................................................... 19

*Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) ..................................... 18

*Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) ............................................. 18

*Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) ...................................... 25

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ......................................................... 20

*Connick v. Thompson*, 563 U.S. 51, 60 (2011) ........................................................... 24

*Cope v. Heltsley*, 28 F.3d 452, 459 (6th Cir. 1997) ................................................... 21

*Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ...................... 19

*Crabbs v. Scott*, 800 Fed. App'x. 332, 336 (6th Cir. 2020) ....................................... 23

*Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) .......................................... 18, 19

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) ........................................................... 20

*EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir.1993) ....................................... 28

*Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) ................................................... 19

*Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 729 (6th Cir. 2010) ..................... 21

*Gambrel v. Knox Cty.*, 25 F.4th 391, 408 (6th Cir. 2022) .......................................... 24

*Hardrick v. City of Detroit*, 876 F.3d 238 (6th Cir. 2017) ......................................... 29

*Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982) ....................................................... 18

*Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020) ................................................ 20

*Johnson v. Mosley*, 790 F.3d 649, 653 (6th Cir. 2015) .............................................. 19

*Johnson v. Sootsman*, Case No. 1:20-cv-1102, 2022 WL 9806957 (W.D. Mich. July 1, 2022) ... 21

*Jones v. Clark County*, 959 F.3d 748 (6th Cir. 2020) ........................................... 19, 24

*Lawrence v. Chabot*, 182 Fed. App'x. 442 (6th Cir. 2006) ........................................ 21

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) .............................................................. 19

*Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) .................. 20

*McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) .......................................... 25

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (2018) .......................................... 23

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ........................................................ 18

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) ...... 28

*Saucier v. Katz*, 533 U.S. 194, 200 (2001) ........................................................... 18, 20

*Shorts v. Bartholomew*, 255 Fed. App'x. 46, 56-57 (6th Cir. 2007) .......................... 23

*Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) .................................. 27

*Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528–29 (6th Cir. 2014) ...... 27

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) .......................... 24

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) .................. 28

*United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).................................................25

*Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 372 (6th Cir. 2024) ................................28

*White v. Pauly*, 580 U.S. 73, 79-80 (2017) ................................................................. 20, 21

**Other Authorities**

Michigan Administrative Code ........................................................................................... 9

## **STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Defendant-Appellees (hereinafter "Defendants") concur with Plaintiff-Appellants (hereinafter "Plaintiffs") request for oral argument, as it will afford counsel for both parties the opportunity to address any questions that this Honorable Court may have concerning the lower court record and the specifics of the parties' respective positions on appeal. Further, oral argument will allow counsel the opportunity to clarify and expand upon any arguments set forth in the parties' respective briefs.

## STATEMENT OF JURISDICTION

On December 1, 2023, Plaintiff-Appellants ("Plaintiffs") filed their initial Complaint in the United States District Court for the Western District of Michigan. (**R. 1**) On February 16, 2024, Plaintiffs filed their First Amended Complaint (**R. 20**). Plaintiffs' First Amended Complaint alleged the following claims: (1) Count I: 42 U.S.C. § 1983, First Amendment – Retaliation; (2) Count II: Unconstitutional Conditions; (3) Count III: 42 U.S.C. § 1983, Fourteenth Amendment – Violation of Due Process; (4) Count IV: Fifth and Fourteenth Amendments – Regulatory Takings; (5) Count V: 42 U.S.C. § 1983 – Conspiracy to Interfere with Civil Rights; (6) Count VI: Michigan State Law Claim – Preemption by Michigan Liquor Control Code; (7) Count VII: Michigan State Law Claim – Preemption by Michigan Right to Farm Act; (8) Count VIII: Michigan State Law Claim – Tortious Interference with a Business Relationship or Expectancy Under State Law; (9) Count XI: Michigan State Law Claim – Defamation; (10) Count X: Michigan State Law Claim – Violation of Open Meetings Act (MCL 15.261 *et seq*.); (11) Count XI: Michigan State Law Claim – Intentional Infliction of Emotional Distress; and (12) Count XII: Michigan State Law Claim – Civil Conspiracy.

Plaintiffs' Amended Complaint named Comstock Charter Township, Kalamazoo Area Building Authority, Jodi Stefforia, Randy Thompson, Scott Hess, Matthew Miller, Ron Sportel, Allan Faust, Jeff Ampey, Patrick Hanna, Clyde

1

Sherwood III, and Mike Alwine as Defendants.  The Complaint did not specify which Defendants were targeted by the different counts and text of the Complaint seems to indicate Plaintiffs intended all Counts to apply to all Defendants.

On March 1, 2024, Defendants filed their Motion to Dismiss under Fed. R. 12(b)(1) and 12(b)(6), requesting that the District Court dismiss Plaintiffs' claims in their entirety. (*R. 26*)  On April 26, 2024, Plaintiffs filed their Response to Township Defendants and KABA Defendants' Motion to Dismiss Pursuant to Fed R. Civ. 12(b)(1) and 12(b)(6), requesting that Defendants' Motion be denied in its entirety. (*R. 31*)  On May 10, 2024, Defendants filed their Reply. (*R. 32*)

On September 17, 2024, the District Court issued its Opinion dismissing Plaintiffs' federal claims with prejudice and declining to exercise supplemental jurisdiction over the remaining state-law claims. (*R. 35*)  On October 17, 2024, Plaintiffs timely filed a Notice of Appeal. (*R. 37*.)

This Honorable Court possesses jurisdiction over Plaintiffs' instant appeal pursuant to 28 U.S.C. § 1291.

2

## <u>COUNTER-STATEMENT OF THE ISSUES PRESENTED ON APPEAL</u>

**I.     Whether The District Court Erred In Finding That Qualified Immunity Barred Plaintiffs' Claims.**

   Defendants answer: No
   Plaintiffs answer: Yes
   District Court answer: No
   This Court should answer: No

**II.    Whether Plaintiffs' Properly Brought Claims Against Comstock Township And KABA.**

   Defendants answer: No
   Plaintiffs answer: Yes
   District Court answer: No
   This Court should answer: No

**III.   Whether The District Court Abused Its Discretion In Dismissing Plaintiffs' Federal Claims With Prejudice.**

   Defendants answer: No
   Plaintiffs answer: Yes
   District Court answer: No
   This Court should answer: No

## STATEMENT OF THE CASE

## I.    Factual Background

Plaintiff, Soil Friends, LLC, is a 22-acre farm located in Comstock Charter Township, Michigan, owned by Plaintiffs, Sarah and Benjamin Martin. (***R. 20***, Page ID # 265-266).  In 2019, Plaintiffs "built a *new* red barn on their property[.]" (***R. 20***, Page ID # 271) (emphasis added).  On April 1, 2022, Defendant, Comstock Charter Township ("Township") notified Plaintiffs by email (***R. 20-5*** Page ID # 348, 349) that they were required to obtain zoning approval for special exception use before they were allowed to hold customer-paying events and parties (e.g., weddings) in this new agricultural barn. (*Id.*). Indeed, Defendant Planning and Zoning Administrator Stefforia emailed Plaintiffs on behalf of the Township to explain that the red barn became an "event barn" under the ordinance when Plaintiffs started using it for non-agricultural uses. (*Id.*). Further, the email stated that the new use required further review to ensure compliance with applicable building codes. (*Id.*).

On April 1, 2022, Defendant Mike Alwine, a Building Official with the Kalamazoo Area Building Authority ("KABA"), emailed Plaintiffs advising that the proposed use "would constitute a Change of Occupancy category" requiring a "Code Compliance plan designed by a registered design professional" to ensure that any necessary changes comply with the code provisions for "life and fire safety, egress, ADA compliance, plumbing fixture compliance, etc." (***R. 20***, Page ID # 272; ***R. 20-***

4

*7*, Page ID # 356).  In response communication about the lack of compliance, Plaintiffs retained architect Jeff Crites of Slocum & Associates to assist them with seeking approval for the change of occupancy as to the red barn. (*Id.*).  The anticipated change in occupancy, with the plaintiffs and their architect upgrading the building and achieving full compliance with State Law and local ordinances, would enable Plaintiffs to utilize the red barn as desired.  With that intent, on September 19, 2022, Plaintiffs submitted their architectural drawings and affidavit for building intended occupant load to Defendant KABA. (***R. 20***, Page ID # 273).  On September 20, 2022, Defendant Alwine (of KABA) advised that Plaintiffs must include a drinking fountain and an accessible route from the public parking area to the public use area(s) on the site plan. (*Id.*).

Plaintiffs did not move forward with their initial stated intention to achieve compliance, ignored the fact that the "red barn" was still violating State Law and Local Ordinances while holding events for paying customers in the barn through the early fall of 2022.  On October 19, 2022, the Township issued a citation to Plaintiffs because they used the red barn for public events without proper zoning and building approvals. (***R. 20,*** Page ID # 274).  On October 20, 2022, Plaintiffs posted a picture on Facebook showing the Township's signage condemning the red barn for violation of Section 108.1.1 of the property maintenance code. (***R. 20***, Page ID # 275).  Section 108.1.1 provides that the building code official must issue a notice declaring the

building is dangerous or unsafe when he makes such a finding. (*R. 26-2*).   In response to the notice, and while still non-compliant, Plaintiffs attempted to assert public pressure on the Township and KABA officials via Facebook. (*R. 20*, Page ID # 275).

On October 31, 2022, several township officials met with Plaintiffs in a good-faith effort to resolve issues regarding Plaintiffs' non-compliance with zoning and State Law building code requirements.   Specifically, the parties met to discuss a noise complaint, violations pertaining to "festivals" being held on the property, and the condemnation of the red barn that was now being used as an on-premises wine tasting room for the paying public while lacking proper approvals for such public attended events. (*Id.*; *R. 20*, Page ID # 276).   During that meeting, the Township explained that Plaintiffs must comply with *both* the zoning requirements *and* the building code requirements which are separate and distinct from the zoning application process. (*Id.*).   Plaintiffs met with Defendants, Planning & Zoning Administrator Stefforia, Supervisor Thompson, Superintendent Hess, and non-party Tim Smith, "in their official capacities and on behalf of Defendant Comstock Township," and Defendant Mike Alwine, "in his capacity as an employee of Defendant Kalamazoo Area Building Authority[.]" (*Id.*).   The Township advised that it never granted Plaintiffs approval to operate the red barn as a winery production

6

space and winery tasting room. (*R. 20,* Page ID # 277).  Plaintiffs said they understood and would cease this unauthorized use of the red barn. (*Id.*).

On November 18, 2022, the Magistrate Judge for the District Court of Kalamazoo County entered an Order Requiring Compliance with Ordinance. (*R. 20-11*, Page ID ## 371-373).  The court found that Plaintiffs violated the Comstock Charter Township Zoning Ordinance and the Unlawful Building Provisions of the State Construction Code as administered and enforced by the Township and KABA. (*R. 20-11*, Page ID # 37).  Among other things, the Order required Plaintiffs to limit use of the red barn to agricultural activities only until they complied with *all* Township zoning ordinances and building requirements. (*Id.*).  Specifically, the Order provided that "[i]f the [Plaintiffs] wishe[d] to undertake any activity other than agricultural use," then they had to "first apply for and obtain zoning approval, if available, for the use." (*Id.*; *R. 20-11*, Page ID ## 371-373).  The Order further provided that "[i]f the [Plaintiffs] obtain[ed] zoning approval for any use that allows access to the barn by anyone other than immediate family and farm laborers," then they had to "obtain an after-the-fact building permit from the Township's Building Department, KABA[.]" (*Id.*).  The Order directed that "[t]here shall be no occupancy of the barn for anything other than sole agricultural use unless and until the building department has undertaken inspections and certified it as compliant with the building code and safety standards and has allowed occupancy thereof." (*Id.*).

7

On November 30, 2022, Plaintiffs again moved to Facebook to assert public pressure when it claimed that the Township and KABA officials improperly obtained the Court Order. (*R. 20*, Page ID ## 281-283).

On December 2, 2022, Defendant Community Development Coordinator Miller, acting in his official capacity "on behalf of Defendant Comstock Township," posted an Official Public Statement on the Township's website titled "FOR IMMEDIATE RELEASE: Comstock Charter Township's statement on Soil Friends Hard Cider Company." (*R. 20,* Page ID ## 283, 328; *R. 20-13*, Page ID ## 379-382). The Township issued the statement in response to Plaintiffs' "public media campaign to discredit the Township, [which was] inaccurate and disheartening" regarding its officials and the enforcement actions against Plaintiffs' misuse of the property. *Id*.

Despite the District Court's Order of November 18, 2022, Plaintiffs failed to achieve compliance. On December 7, 2022, Defendant Jodi Stefforia, acting in her official capacity on behalf of the Township, sent a letter to Plaintiffs to reiterate that Plaintiffs must comply with *all* zoning *and* building code requirements to use the red barn as a winery tasting room and/or winery production space. (*R. 20*, Page ID ## 285-286; *R. 20-14*, Page ID ## 385-386). In the letter, Defendant Stefforia summarized the plaintiffs' activities to highlight the fact that they continued to act without proper approvals and in non-compliance with the Township's zoning ordinance. (*Id.*). The letter clarified, again, that Plaintiffs had to obtain zoning

approvals *and* comply with all State Law building code requirements. (*Id.*). Therefore, the letter addressed the zoning requirements for the agricultural-use red barn to be converted into a winery tasting room for customers. (*Id.*). The letter further reiterated that Plaintiffs had to also satisfy all building code requirements before they could use the red barn as a winery with the following: "Reminder, this letter does not address the separate building code issues that need to be addressed through the Kalamazoo Area Building Authority." (*Id.*).

Notwithstanding the Township's efforts to spell out the two-part process, Plaintiffs still failed to achieve compliance with all zoning and building requirements. Plaintiffs continued to use the red barn as a winery tasting room for the public and a winery production space in violation of the State District Court Order. Rather than work with the Township to achieve compliance, or unilaterally work to achieve compliance as outlined in the Township's and KABA's prior correspondences to comply with the Court Order, Plaintiffs filed a Complaint for Superintending Control over the 8th District Court for the County of Kalamazoo on January 17, 2023, in the 9th Circuit Court for the County of Kalamazoo. (***R. 20***, Page ID #286).

On February 21, 2023, in yet another good-faith attempt to resolve the issues, Defendant Township (with assistance of its Counsel – former Co-Defendants Seeber and Kaufman) agreed to enter a Stipulated Amended Order to amend the Order of

9

November 18, 2022. (*R. 20*, Page ID #287; *R.20-17*, Page ID ## 417-420).  In the
Stipulated Order, Plaintiffs **_admitted_** responsibility for violations of the Township's
Zoning Ordinance and the Unlawful Building Provisions of the State Construction
Code. (*Id.*).  In addition to the fines and costs imposed pursuant to such finding of
responsibility, the Kalamazoo County District Court ordered additional action by the
parties. (*Id.*).  *The Order required Plaintiffs to cease all commercial use and public
access to the red barn and to use the barn for exclusive agricultural purposes.* (*Id.*).
Further, the Order prohibited Plaintiffs from operating a commercial business entity
inside the barn and from allowing music, retail sales, food, alcohol or beverages
inside the red barn. (*Id.*).  The court ordered Plaintiffs to continue to meet these
requirements "until such time as it has satisfied *all* required zoning *and* building
requirements for use of the red barn for its desired activities." (*Id.*) (emphasis added).

Because Plaintiffs had to meet these Court ordered requirements before it
could utilize the red barn as they desired, the court expressly permitted the
Township's Ordinance Enforcement Officer and/or its Planning & Zoning
Administrator (Defendant Stefforia) and Building Official (Defendant Alwine of
KABA) to access the red barn after entry of the Order to perform a compliance
inspection. (*Id.*).  Additionally, because Plaintiffs had failed to do so, the Stipulated
Order further required Plaintiffs to submit a zoning application "for special
exception with the Township for use of [Soil Friends'] red barn for a winery tasting

room and winery production space." (*Id.*).  Once Plaintiffs submitted the required zoning application, the Order directed the Township to review the application in good faith and process it in a timely manner without undue delay, which it did. (*Id.*).

On March 2, 2023, Defendant Stefforia, acting in her official capacity on behalf of the Township, sent Plaintiffs an email stating that the Township had reviewed the submitted plan and related documents for Plaintiffs' special exception use and site plan approval request for usage of the red barn as a winery tasting room. (***R. 20***, Page ID ## 287-288; ***R. 20-18***, Page ID ## 422-427).  The email included the Township Fire Marshall's comments and a checklist of missing and required information. (*Id.*).  Among other things, the Fire Marshall advised that Plaintiffs must install a sprinkler system in the red barn to operate it as a winery tasting room that would host the public. (*Id.*).

On April 13, 2023, the Planning Commission held a public hearing on Plaintiffs' special use exception application. (***R. 20***, Page ID # 289).  During the hearing, the Planning Commission considered a Staff Report allegedly prepared by Defendant Stefforia in her official capacity on behalf of the Township. (***R. 20***, Page ID # 289; ***R. 20-19***, Page ID ## 429-437).  The Staff Report explained that, originally, "[t]he red barn was built for agricultural use which means no building permits were required." (***R. 20-19***, Page ID ## 429-437).  However, because "[t]he Township and the Michigan Liquor Control Commission only recently became

11

aware of the change in use of this building to production, public access and events, . . . an agreement was reached by the Township Board with the [Plaintiffs'] attorney on his behalf, that production would not occur in the red barn after a certain date and that the [Plaintiffs] would apply for special exception use and site plan approval." (*Id.*).

The Staff Report further explained that "the Michigan Liquor Control Commission found Soil Friends, LLC in violation of three rules of the Michigan Administrative Code with respect to the making of hard cider in the red barn. The violation most relevant to this special exception use request [was] the failure to comply with the Zoning Ordinance." (*Id.*). Additionally, the Staff Report noted that Plaintiffs still had to obtain approvals from the Kalamazoo County Road Commission and the Kalamazoo County Health Department. (*Id.*). The Staff Report recommended that action on the request be postponed until Plaintiffs provided written verification of compliance with the requirements imposed by the Road Commission and Health Department. (*Id.*).

On April 27, 2023, the Planning Commission (collectively, member-defendants Ron Sportel, Jeff Ampey, Patrick Hanna, Allan Faust, and Clyde Sherwood III, as well as now dismissed Jennifer Jones-Newton and Larry Nichols) reviewed, processed, and granted Plaintiffs' zoning application for special exception use, subject to specified conditions including, but not limited to, compliance with *all*

required federal, state, county and local licensing and approvals—a condition already imposed by Stipulated Amended Order. (***R. 20***, Page ID ## 290-291; ***R. 20-21***, Page ID ## 441-450). On May 22, 2023, Plaintiffs emailed Defendant Mike Alwine, in his official capacity as building official and agent for Defendant KABA, advising that the Planning Commission granted the special use application and requesting information regarding what would be required to obtain building permits for the red barn as a winery tasing room. (***R. 20***, Page ID # 292).

On May 23, 2023, Defendant Alwine, acting in his official capacity on behalf of KABA, emailed Plaintiffs advising that they had to submit a new building permit application and building plans to use the red barn as a winery tasting room and winery production space because the prior application was for a "wedding venue/farm market" only. (*Id.*; ***R. 20-22***, Page ID # 452). In response, Plaintiffs allegedly sought the assistance of an engineer to satisfy the requirements for the building permits on August 24, 2023, but the engineer advised that it would not assist Plaintiffs on September 1, 2023. (***R. 20***, Page ID ## 293-294). Rather than seek assistance from another engineer to simply obtain the requisite building approvals, Plaintiffs elected to initiate further legal action against the Defendants.

## I.    Procedural History – Plaintiffs' State, Federal, and 6th Circuit Litigation

On June 30, 2023, Plaintiffs filed a Motion for Order to Show Cause Why the Township Should Not Be Held in Contempt of the Stipulated Amended Order in the

8th District Court for the County of Kalamazoo. (*R. 26-3*).  In their Motion for Order to Show Cause, Plaintiffs acknowledged that the Township granted Plaintiffs' zoning application for special exception use but contended that the Township nonetheless violated the Stipulated Amended Order by requiring Plaintiffs to also obtain the requisite building approvals (which could not be granted without additional building plans as requested by KABA). (*Id.*).  In its response, the Township highlighted that the Stipulated Amended Order expressly required Plaintiffs to obtain *both* zoning approval *and* building approval before they could operate a winery tasting room in the red barn. (*R. 26-4*).  Thus, the Kalamazoo County District Court held that the Township did not violate the Stipulated Amended Order by prohibiting Plaintiffs' use of the red barn as a winery tasting room. (*Id.*).  The court did not find that the Township violated the Stipulated Amended Order.  (*R. 26-5*).  Instead, the court ruled for the Township and entered an Order Denying Plaintiffs' Motion for Order to Show Cause Why the Township Should Not Be Held in Contempt on September 1, 2023. (*Id.*).

Notwithstanding the court's Order of September 1, 2023, and the prior related Court Orders, Plaintiffs elected to initiate yet further litigation.  On December 1, 2023, Plaintiffs filed their Initial Complaint in the Western District Court against sixteen defendants, alleging a variety of state and federal claims. (*R. 1*).  On February 16, 2024, Plaintiffs filed their Amended Complaint, again bringing a slew of federal

14

and state law claims. (*R. 20*) Plaintiffs named as defendants Comstock Charter Township, the Kalamazoo Area Building Authority, Jodi Stefforia, Randy Thompson, Scott Hess, Matthew Miller, Jennifer Jones-Newton, Larry Nichols, Ron Sportel, Allan Faust, Jeff Ampey, Patrick Hanna, Clyde Sherwood III, Mike Alwine, and the Township's General Counsel Roxanne Seeber and Catherine Kaufman. (*Id.*).

On September 17, 2024, the District Court issued an Opinion and Order dismissing Plaintiffs' federal claims with prejudice and declining to exercise supplemental jurisdiction over the remaining state-law claims. (*R. 35*)  In reaching this decision, the District Court confined its analysis to the question of immunity.  It held that defendants Seeber and Kaufman were entitled to absolute immunity because their actions were functionally analogous to those of a prosecutor. (*Id.* at Page ID # 822).  As for the remaining individual defendants, the court held they were entitled to qualified immunity because Plaintiffs failed to demonstrate a clearly established right under the particularized circumstances of the current case. (*Id.* at Page ID # 830).  The District Court did not consider any claims against the Township or the KABA because the Amended Complaint did not contain a *Monell* claim and also because Plaintiffs, in prior pleadings had stated their intent was to only bring claim "against the individuals themselves." (*R. 35*, Page ID # 824 n. 3; *R. 30*, Page ID ## 708-709).

Plaintiffs now appeal that ruling to this Court. On July 25, 2025, they filed their Opening Brief arguing that the District Court erred in finding the Plaintiffs were not seeking a course of action against Comstock Township and KABA; erred in its analysis of qualified immunity; that their constitutional claims against the individual and municipal defendant are viable; and that the District Court abused its discretion in dismissing their federal claims with prejudice. Prior to this appeal, Plaintiffs stipulated the dismissal of Defendants Roxanne Seeber, Catherine Kaufman, Jennifer Jone-Newton and Larry Nichols from the case, thereby declining to challenge the District Courts ruling that Defendant Seeber and Kaufman were entitled to absolute immunity. (***R. 26***)  Thus, Plaintiffs' appeal progresses as to the remaining nine (9) Township individual defendants and KABA's Mike Alwine.

## <u>SUMMARY OF THE ARGUMENT</u>

The District Court was correct in its holding that Plaintiffs' claims against the individual Township and KABA defendants were barred by qualified immunity. It correctly recognized that once the defense of qualified immunity was raised, Plaintiff bore the burden of overcoming it and demonstrating that the constitutional rights purportedly violated were clearly established. Plaintiffs failed to advance any legal precedent sufficient to have put the individual Defendants on notice their conduct was unlawful; therefore, the District Court correctly determined Plaintiffs failed to overcome qualified immunity.

16

The District Court correctly determined that the Amended Complaint did not bring *Monell* claims against either the Township or the KABA.  Aside from naming the Township and the KABA as defendants, Plaintiffs' complaint contained no indication it intended to loft claims against these entities directly.  Indeed, as the District Court noted in its Opinion and Order, the Plaintiffs had previously clearly indicated that they were *not* bringing a *Monell* claim and that their complaint should be interpreted as bringing claims only against the named individual defendants.  Plaintiffs have therefore waived the opportunity to raise those claims in front of this court.

The District Court correctly dismissed Plaintiffs' federal claims with prejudice because no future amendments would serve to overcome the defense of qualified immunity.  Plaintiff had ample opportunities to cite legal precedents that would have clearly established the constitutional rights they claim were violated.  They have failed to do so because no such legal precedent exists.  Thus, Qualified Immunity is proper and this Court should uphold the District Court's dismissal of the plaintiffs' claims.

## **ARGUMENT**

## I.    **THE DISTRICT COURT CORRECTLY RULED THAT QUALIFIED IMMUNITY BARRED PLAINTIFFS' CLAIMS.**

The Supreme Court has stated that district courts are to terminate § 1983 cases where the defendants are entitled to qualified immunity as early in the litigation

17

process as possible. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The "substantial social costs, including the risk of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties …" *Id.*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). This is because qualified immunity is not simply a defense to liability but is in fact "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity "isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (citing *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007)). "If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate." *Id.* (citing *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021)). Therefore, "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier*, 533 U.S. at 200.

Qualified immunity is an absolute defense to § 1983 claims. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The issue of

18

qualified immunity is essentially a legal question for the court to resolve." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

"[The] plaintiff bears the burden of overcoming qualified immunity." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). Specifically, after a defense of qualified immunity is raised, the burden shifts to the plaintiff to demonstrate that the defendants violated a right that was so clearly established "that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Jones v. Clark County*, 959 F.3d 748 (6th Cir. 2020) (citing *Johnson v. Mosley*, 790 F.3d 649, 653 (6th Cir. 2015)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Court employs a two-part test to determine whether qualified immunity applies. "The first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir.

2013)). "These two steps may be addressed in any order, but both must be answered in the affirmative for the plaintiff's claim to proceed." *Id.*

The "clearly established" standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018). Thus, in evaluating whether a constitutional right was clearly established for purposes of qualified immunity, the Court "must examine the particular situation that [the defendants] confronted and ask whether the law clearly established that their conduct was unlawful." *Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). The Supreme Court has repeatedly held that the clearly established prong "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201); *see also White v. Pauly*, 580 U.S. 73, 79-80 (2017).

Therefore, these plaintiffs must show that the law was clearly established under the "*particularized*" facts of this case using specific case law such that would confirm that these defendants had to know that their conduct violated the Constitution. *Anderson*, 483 U.S. at 640 (emphasis added). "Without such a case, the plaintiff will almost always lose." *Howse*, 953 F.3d at 407. Otherwise, "Plaintiffs would be able to convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

20

*White*, 580 U.S. at 79 (quoting *Anderson*, 483 U.S. at 640). Indeed, "as the Sixth Circuit observed in *Lawrence v. Chabot*, 182 Fed. App'x. 442 (6th Cir. 2006), '[t]he burden of proving that the right was clearly established "rests squarely on the plaintiff"' and the plaintiffs' failure "to argue, much less provide any case law to demonstrate[] that the defendants violated clearly established constitutional rights,"' constitutes waiver of the issue and grounds for entitlement to qualified immunity." *Johnson v. Sootsman*, Case No. 1:20-cv-1102, 2022 WL 9806957 (W.D. Mich. July 1, 2022) (quoting *id.* and *Cope v. Heltsley*, 28 F.3d 452, 459 (6th Cir. 1997)).

Once Defendants raised qualified immunity as a defense in this matter, the burden shifted to Plaintiffs to show it should not apply. This is a burden they have failed to meet. In their response to Defendants' Motion to Dismiss, Plaintiffs relied exclusively on the case of *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 729 (6th Cir. 2010) to argue their First Amendment rights were clearly established and that Defendants were, therefore, on notice their conduct was constitutionally improper. (**R. 30**, Page ID ## 702-703). The District Court, however, thoroughly analyzed *Fritz*, comparing its facts to those of the case at bar and rightly pointed out that, aside from involving the same township, *Fritz* was factually dissimilar and "does not constitute precedent that places the constitutional question beyond debate." (**R. 35,** Page ID ## 828-830)(internal quotation marks omitted). As for Plaintiffs' remaining federal claims, the District Court correctly recognized that "Plaintiffs "wholly fail to

argue – let alone identify – a case with sufficiently similar facts that would have provided fair warning to each individual Defendant that his or her respective alleged conduct (or conspiracy to commit such conduct) unlawfully violated Plaintiffs' rights under the Fifth or Fourteenth Amendments." (***R. 35***, Page ID # 828).  Plaintiffs failed to identify a single case in their briefing to the District Court that would counter the defendants' claim of qualified immunity – because no such case exists.

Tellingly, Plaintiffs have made no attempt to remedy this deficiency in their appeal to this Court.  Indeed, rather than attempting to meet the burden described, for example in *Lawrence*, Plaintiffs simply quibble that the burden to overcome qualified immunity is not high at the 12(b)(6) stage and insist that their allegations, if taken as true, constitute violations of clearly established rights.  This Court is apparently expected to simply take Plaintiffs at their word on this point while they failed to advance a single case in support of this position.  They make no attempt to argue the District Court wrongfully applied *Fritz* or that some other precedent exists that would otherwise clearly establish their First Amendment claim, they also continue to fail to cite *any* cases in support of their Fifth and Fourteenth Amendment claims.  Defendants respectfully submit that Plaintiffs could not do so because there is no clearly established right under the constitutional provisions alleged by Plaintiff where, as here, Defendants acted pursuant to the results of the state court proceedings and Court entered judgments.  For these reasons, it is Defendants' position that

Plaintiffs failed to advance any meaningful argument that the District Court's ruling was improper and, therefore, qualified immunity serves to defeat all Plaintiffs' federal claims.

## II. PLAINTIFFS FAILED TO PROPERLY BRING CLAIMS AGAINST COMSTOCK TOWNSHIP AND THE KABA.

Plaintiffs assert they have pleaded viable constitutional claims against the Township and KABA under *Monell* and demand that these claims be adjudicated. Plaintiffs further assert that these alleged constitutional violations occurred as a result of "official policies, customs, the actions of final decision makers, Civil Conspiracy, and *inter alia*." However, no such language of a "Monell claim" exists in the plaintiffs' Amended Complaint and the plaintiffs cannot, now, introduce such a claim in their appellant brief. This is further highlighted by the fact that the plaintiffs previously affirmatively declared that their claims do not include a Monell claim.

A municipality may only be held liable "where a policy or custom of the municipality has caused a violation of the plaintiff's constitutional rights." *Shorts v. Bartholomew*, 255 Fed. App'x. 46, 56-57 (6th Cir. 2007). To prove this, a plaintiff must "point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 Fed. App'x. 332, 336 (6th Cir. 2020) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (2018)). Put more directly, a plaintiff "must connect the employee's conduct to a

23

municipal policy or custom." *Gambrel v. Knox Cty.*, 25 F.4th 391, 408 (6th Cir. 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).  The pleadings must therefore set forth the specific policy or custom through "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Jones v. Clark Cnty.*, 959 F.3d 748, 761 (2020) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Plaintiffs' newly created *Monell* claim is woefully deficient to the point of being non-existent.

Firstly, neither the Plaintiffs' Initial nor Amended Complaint make any mention of *Monell* or its progeny.  Also conspicuous by its absence is any allegation that the municipal defendants possessed some type of policy or custom which was the cause of the purported constitutional violations.  On appeal, Plaintiffs argue that the District Court's finding that the Plaintiffs did not intend to sue the Township and the KABA directly was incorrect. (Plaintiffs Brief on Appeal, ***R. 32,*** Page ID ## 27-33).  They point to "the fact" that many of the allegations in their complaint concern repeated wrongdoing by officials vested with final decision-making authority thus intimating the existence of an official policy or custom. (*Id*. at Page ID ## 31-32). They also argue that the Township was aware of the purported constitutional violations committed by various individually named defendants and "failed to

24

intervene, discipline, or correct" this behavior, demonstrating a "tacit approval" and "an inference that its inaction was the product of custom, not oversight." (*Id*. at Page ID ## 33-34).  In other words, Plaintiffs argue their Amended Complaint contained *Monell* claims against the Township and the KABA all along, the District Court just didn't look for them hard enough.

This argument runs contrary to clearly established case law. The contortions Plaintiffs go through in attempting to argue they were in fact bringing a *Monell* claim (while wholly failing to name it as such in the controlling Amended Complaint) clearly demonstrate that the presence of this purported claim could only be divined through the deduction of sparce and unclear inferences.  (See e.g. *Id.* at Page ID ## 31-33).  A party cannot "mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) (internal citations and quotation marks omitted); *see also McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (holding that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") (cited for guidance purposes only).

Secondly, and perhaps most tellingly, Plaintiffs previously made clear in prior pleadings that this omission was intentional, thus detonating their claims that the

25

District Court's findings on this point was erroneous. In their Motion to Dismiss in front of the District Court, Defendant's argued Plaintiffs' Amended Complaint was duplicative because all individual defendants were being charged for actions taken "in their official capacities" and "on behalf of" the municipal defendants Township and KABA. (*R. 26*, Page ID # 625). They were therefore equivalent to a suit made directly against government entities and should thus be dismissed because the Township and the KABA were already listed as defendants. (*Id.*). In response, Plaintiffs made clear the persons named in its Amended Complaint were "being sued as individuals not as officials, agents, and/or pursuant to their office." (*R. 30*, Page ID # 708) (internal quotation marks omitted). Plaintiffs went on to admit that neither their Initial nor Amended Complaint contained any sort of *Monell* claim. As they put it, "Plaintiffs' allegations do not seek recourse nor imply a policy, practice, or custom of Defendant Comstock Township that is in issue . . ." (*Id.*)

The issue of *Monell* was therefore previously raised. Plaintiffs were, by their own admission, well aware that their Amended Complaint did not attempt to hold the Township or the KABA directly responsible for the alleged wrongdoing and did not contain the requisite information to sustain a claim under *Monell*. If Plaintiffs had wanted to add a *Monell* claim they could have sought permission from the court to amend their Complaint. They did not do so. Instead, they provided clear guidance to the District Court that they were not bringing a *Monell* claim and that instead they

"were seeking a course of action against the individuals themselves."  For them to now come before this Court and claim their Amended Complaint contains sufficient information to sustain a claim under *Monell*, after admitting to the Federal District Court that no such *Monell* claim is at issue, to now argue the District Court's finding was in error, is not only disingenuous, but willfully misleading.

This purportedly preexisting *Monell* claim is in actuality nothing more than a thinly veiled attempt to raise a new claim on appeal.  This Court has explicitly stated that it will not consider new claims or arguments raised for the first time on appeal unless exceptional circumstances are present. *See e.g. Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019).  These exceptional circumstances are not present when a plaintiff simply neglects or fails to raise the claim at the District Court level, let alone when a plaintiff makes a conscious choice not to bring the claim and clearly articulates that choice. *See Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528–29 (6th Cir. 2014).  For these reasons, Defendants respectfully request that this Court find Plaintiffs' Amended Complaint did not contain a *Monell* claim and it, thus, cannot be at issue in this appeal.  In the alternative, Defendants request that this Court find that any pre-existing *Monell* claim, or any *Monell* claim that the plaintiffs believe previously existed, was at the very least specifically forfeited and cannot be at issue in this appeal.

## III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS WITH PREJUDICE.

The District Court chose to dismiss Plaintiffs' claims with prejudice noting they had already amended their Complaint and citing precedent stating dismissal with prejudice is appropriate when a complaint cannot be made viable through future amendments.  Plaintiffs oppose that decision arguing they should have been granted an opportunity to amend their complaint under the District Court's direction.

This Court has consistently held that dismissal with prejudice is appropriate when it is clear that the complaint cannot be saved by amendment. *See e.g. Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 372 (6th Cir. 2024).  "[W]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 342 F.3d 634, 644 (6th Cir. 2003)(quoting *EEOC v. Ohio Edison Co*., 7 F.3d 541, 546 (6th Cir.1993). However, a complaint is considered futile when, even if proposed changes are included, it still "could not withstand a Rule 12(b)(6) motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

The District Court based its decision to dismiss Plaintiffs' federal claims on qualified immunity.  It stated that the Plaintiffs failed to demonstrate "a clearly established right based on the alleged conduct of each individual Defendant. Therefore, Plaintiffs have failed to satisfy their burden of overcoming the defense of

immunity for the individual Defendants' discretionary decisions at issue in Counts I through V." (*R. 35*, Page ID # 830).  Plaintiffs were fully aware, prior to filing this appeal, that their claims against the individual defendant rested entirely upon whether they are able to overcome qualified immunity.  Not only that, but the District Court also limited its decision to the second question of the qualified immunity analysis, namely whether the rights at issue were clearly established.  Therefore, Plaintiffs knew it was incumbent upon them to find a legal precedent that would have provided the individual defendants with fair warning that their actions were unconstitutional.

As noted above, Plaintiffs have not accomplished this task.  They fail to advance case law or any other legal precedent purporting to show the rights in question were clearly established.  Defendants respectfully posit that this glaring admission is due to the fact that no such legal precedent exists.  On the contrary, applicable case law indicates that, far from being constitutionally improper, the actions of the individual defendant were entirely lawful. *See, e.g., Hardrick v. City of Detroit*, 876 F.3d 238 (6th Cir. 2017) (upholding officers' actions as constitutional where they acted pursuant to a lawful eviction order).  For these reasons, future amendments would not suffice to make Plaintiffs' federal claims against the individual defendants viable.  The District Court was therefore correct in its decision to dismiss these claims with prejudice.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court sustain the District Court's Order for the reasons stated above and grant any other relief this Court deems lawful and just.

Dated:  August 22, 2025                    Respectfully submitted,

STRAUB, SEAMAN & ALLEN, P.C.

/s/ James T. McGovern
James T. McGovern (P79410)
Attorneys for Comstock Township and KABA
1014 Main Street, P.O. Box 318
St. Joseph, MI  49085
(269) 982-1600
jmcgovern@lawssa.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B) and 6 Cir. R. 32(a), I hereby certify that the foregoing brief meets the type volume requirements.  It was processed in Microsoft Word using 14pt. Times New Roman font.  The brief contains 30 pages and 6,861 words.

Dated:  August 22, 2025                    /s/ James T. McGovern
James T. McGovern (P79410)
Attorneys for Comstock Township and KABA
1014 Main Street, P.O. Box 318
St. Joseph, MI  49085
(269) 982-1600
jmcgovern@lawssa.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 22nd day of August, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all counsel of record registered to receive same.

Dated:  August 22, 2025          */s/ Denise A. Van Hoven*
                                 Denise A. Van Hoven
                                 Legal Assistant to James T. McGovern

# **ADDENDUM**

Complaint                                             R. 1, Page ID ## 1-60

First Amended Complaint                               R. 20, Page ID ##264-462

First Amended Complaint Exhibit 5                     R. 20-5, Page ID ## 348-349

First Amended Complaint Exhibit 7                     R. 20-7, Page ID ## 355-356

First Amended Complaint Exhibit 11                    R. 20-11, Page ID ## 371-374

First Amended Complaint Exhibit 13                    R. 20-13, Page ID ## 379-383

First Amended Complaint Exhibit 14                    R. 20-14, Page ID ## 385-390

First Amended Complaint Exhibit 17                    R. 20-17, Page ID ## 417-420

Comstock Township and KABA Defendants Brief          R. 26, Page ID ## 603-658
in Support of Motion to Dismiss

Response in Opposition to Comstock and KABA's         R. 30, Page ID ## 603-658
Motion to Dismiss

Response in Opposition to Defendant Seeber and        R. 31, Page ID ## 716-767
Kaufman's Motion to Dismiss

Comstock Township and KABA Defendant's               R. 32, Page ID ## 768-782
Plaintiffs' Reply to Motion to Dismiss

Opinion & Order                                       R. 35, Page ID ## 808-831

Notice of Appeal                                      R. 37, Page ID ## 833-834