Oral argument not yet scheduled

No. 24-1925

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

SOIL FRIENDS, LLC, a Michigan limited liability company; BENJAMIN MARTIN, an individual; SARAH MARTIN, an individual

Plaintiffs -Appellants,

v.

CHARTER TWONSHIP OF COMSTOCK, MI, a Michigan municipal corporation; KALAMAZOO, MI AREA BUILDING AUTHORITY, a Michigan municipal corporation or agent of Comstock Township; JODI STEFFORIA, individual; RANDY THOMPSON, individual, SCOTT HESS, individual; MATTHEW MILLER, individual; RON SPORTEL, individual; ALLAN FAUST, individual; JEFF AMPEY, individual; PATRICK HANNA, individual; CLYDE SHERWOOD, III, individual; MIKE ALWINE, individual

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Michigan
No. 1:23-cv-01267 (Beckering, J.)

**REPLY BRIEF OF PLAINTIFFS -APPELLANTS**
**SOIL FRIENDS, LLC ET AL.**

Steven J. Kustra, Esq.
*KUSTRA & BLOOM PLC*
21002 Mack Avenue
Grosse Pointe Woods, MI 48236
(313) 586-4444
skustra@kustrabloom.com

Counsel for Plaintiffs -Appellants
Soil Friends, LLC et. al.

Date: September 12, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

REPLY ARGUMENT ........ 3

I. DEFENDANTS VIOLATED THE CLEARLY ESTABLISHED RIGHTS OWED TO PLAINTIFFS ........ 3

A. PLAINTIFFS WERE RETALIATED AGAINST BY DEFENDANTS FOR THEIR EXERCISE OF THEIR FIRST AMENDMENT RIGHTS. ........ 4

B. PLAINTIFFS FIFTH AND FOURTEENTH AMENDMENT RIGHTS ARE CLEARLY ESTABLISHED RIGHTS. ........ 7

C. PLAINTIFFS HAVE ADEQUATELY PLEAD DUE PROCESS AND REGULATORY TAKING CLAIMS. ........ 10

II. THE DISTRICT COURT ERRED IN ITS APPLICATION OF THE STANDS OF REVIEW FOR MOTION TO DISMISSED REGARDING QUALIFIED IMMUNITY. ........ 11

III. PLAINTIFFS FIRST AMENDED COMPLAINT SUFFICIENTLY ALLEGES A *MONELL* CLAIM AND SUCH A CLAIM MUST BE ADJUDICATED. ........ 13

IV. THE DISTRICT COURT ABUSED ITS DISTRCTION IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS WITH PREJUDICE. ........ 16

CONCLUSION ........ 16

CERTIFICATE OF COMPLIANCE ........ 17

CERTIFICATE OF SERVICE ........ 17

# TABLE OF AUTHORITIES

## Cases

*Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) ....................................3
*Bd. of Regents v. Roth*, 408 U.S. 564 (1972) ....................................7
*Binay v. Bettendorf*, 601 F.3d 640 ....................................4
*Brenay v. Schartow,* 709 F. App'x 331 (6th Cir. 2017)....................................14
*Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002) ....................................9
*Fritz v. Charter Township of Comstock,* 592 F.3d 718 (6th Cir. 2010)....................................4
*Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). ....................................14
*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)............12
*Kaminski v. Coulter,* 865 F.3d 339, 344 (6th Cir. 2017) ....................................13
*Leonard v. Robinson*, 477 F.3d 347, 357-58 (6th Cir. 2007). ....................................4
*Mathews v. Eldridge* (1976), 424 U.S. 319, 333....................................7
*Morgan v. Fairfield Cty*., Ohio, 903 F.3d 553, 564 (6th Cir. 2018)....................................4
*New York Times v. Sullivan*, 376 U.S. 254, 273 (1964). ....................................4
*Ohio Bell Tel. Co. v. Pub. Utils. Comm'n*, 301 U.S. 292 (1937) ....................................9
*Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992) ....................................11
*Ramsey v. Bd. of Educ. of Whitley Cnty*., 844 F.2d 1268, 1273 (6th Cir. 1988)........8
*Scarbrough v. Morgan Cnty. Bd. of Educ*., 470 F.3d 250, 261 (6th Cir.20) ..............9
*Seales v. City of Detroit*, Mich., 724 F. App'x 356, 359 (6th Cir. 2018)....................3
*Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)....................................3
*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)................12
*United States v. Abilene & S. R. Co*., 265 U.S. 274, 288-289 (1924)........................9
*Warren v. City of Athens*, Ohio, 411 F.3d 697, 707-08 (6th Cir. 2005)......................9
*Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)....................................13

## REPLY ARGUMENT

### I. DEFENDANTS VIOLATED THE CLEARLY ESTABLISHED RIGHTS OWED TO PLAINTIFFS

Plaintiffs have met the requirements to overcome a defense of Qualified Immunity. The standard requires a two-pronged analysis and Defendants have abandoned any argument regarding individualization and fall short on their argument regarding a violation of clearly established rights, rendering their position untenable. Reliance on the District Court's findings is also misguided and futile because the District Court clearly erred in its application of the precedent to the case at bar. As such, this Court must grant relief to Plaintiffs-Appellants as requested in this appeal.

The Sixth Circuit "two-step inquiry" as to whether qualified immunity applies requires: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right?; and (2) is the right clearly established? *Seales v. City of Detroit*, Mich., 724 F. App'x 356, 359 (6th Cir. 2018) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). "A right is clearly established if 'the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (citations omitted).

As this Court has stated, "the sine qua non of the 'clearly established' inquiry is 'fair warning". *Id*. at 612-13. "There does not need to be 'a case directly on point, but existing precedent must have placed the . . . constitutional question beyond

debate.'" *Morgan v. Fairfield Cty*., Ohio, 903 F.3d 553, 564 (6th Cir. 2018). The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Baynes*, at 610. At bottom, the dispositive inquiry is whether, at the time of injury, the law was "sufficiently clear [such] that a reasonable official would understand that what he [was] doing violate[d]" the plaintiff's constitutional rights. *Binay v. Bettendorf*, 601 F.3d 640. In this case it is abundantly clear that there was a violation of clearly established rights.

**A. PLAINTIFFS WERE RETALIATED AGAINST BY DEFENDANTS FOR THEIR EXERCISE OF THEIR FIRST AMENDMENT RIGHTS.**

The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'" *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964). To demonstrate that this right was clearly established, Plaintiffs relied on *Fritz v. Charter Township of Comstock,* 592 F.3d 718 (6th Cir. 2010), where this Court held that a citizen's public comments at municipal meetings and in letters to the press were clearly established protected activity under the First Amendment. *Id*. (*See Leonard v. Robinson*, 477 F.3d 347, 357-58 (6th Cir. 2007).

The parallels are striking here. In *Fritz*, the protected speech consisted of public criticism of Township leadership. Plaintiffs here engaged in the same type of protected activity, criticizing Comstock Township officials, including through Facebook posts highlighting arbitrary enforcement and leadership failures. In both

cases, officials responded with retaliatory motive rather than neutral enforcement. In *Fritz*, the Township Supervisor, angered by the criticism, telephoned the plaintiff's employer on multiple occasions to disparage her and threaten consequences. Here, Township officials similarly acted out of their animus of Plaintiffs. Township officials condemned Plaintiffs' barn, orchestrated an injunction through an informal hearing where Plaintiffs' right counsel was barred, and imposed an arbitrary $200,000 sprinkler condition. Despite these egregious actions, Township officials did not cease in their punishment of Plaintiffs for their exercise of their First Amendment rights including transmitting false information to the Michigan Liquor Control Commission to jeopardize Plaintiffs' licensing. The common thread is unmistakable: Comstock Township and its officials used their public authority not to act accordingly, but to punish critics.

Finally, the adverse action taken by Comstock Township and its officials was sufficiently severe to deter a person of ordinary firmness, like Plaintiffs, from continuing to speak out and exercise their First Amendment rights. When compared to *Fritz*, Soil Friends faced even greater harm: the loss of the use of their barn, crippling financial burdens, disruption of their business operations, and reputational injury. If *Fritz* constituted an adverse action sufficient to state a retaliation claim, then the far more destructive actions here (i.e. revoking the use of a barn essential to operations, crippling Plaintiffs with financial demands, and undermining them

before regulators) are a fortiori unconstitutional. The Township had ample notice from *Fritz* and other precedents that retaliatory use of governmental authority in response to criticism violates the First Amendment.

The District Court and Defendants' attempt to distinguish Fritz fails. The District Court found that "aside from the obvious similarities in naming the township the same name. . .*Fritz* has significant factual differences from the Plaintiff's allegation in this case." As this Court has explained, it is not necessary that there be a case with the exact same fact pattern, or even fundamentally similar facts. *Murray v. Ohio Dep't of Rehab. & Corr.*, 29 F.4th 779, 790 (6th Cir. 2022). The relevant question is whether officials had "fair warning" that their conduct was unconstitutional. *Baynes*, 799 F.3d at 612–13. *Fritz* provided that warning in unmistakable terms.

Nor is *Fritz* the only case confirming Plaintiffs' rights were clearly established. In *Barret*, this court held that, "it is evident that the First Amendment right to criticize public officials is well-established and supported by ample case law. Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." 130 F.3d at 264.

Thus, when the Township retaliated against Plaintiff's First Amendment protected speech thereby condemning their barn, imposing irrational permit

conditions, manipulating an informal hearing, and misleading regulators in direct response to Plaintiffs' criticism, the Township's actions violated clearly established First Amendment rights.

### B. PLAINTIFFS FIFTH AND FOURTEENTH AMENDMENT RIGHTS ARE CLEARLY ESTABLISHED RIGHTS.

Plaintiffs' procedural and substantive due process claims arise from rights that have long been clearly established by the Supreme Court and this Court. The District Court erred by concluding otherwise and by dismissing these claims for lack of a factually identical precedent. The District Court found that not just the First Amendment retaliation claim; but, Plaintiffs' remaining federal claims did not provide a case with sufficiently similar facts that would have provided fair warning to each individual Defendant that their respective alleged conduct unlawfully violated Plaintiffs' rights under the Fifth or Fourteenth Amendments."

The Supreme Court has made clear for decades that the "root requirement" of the Due Process Clause is that an individual must receive notice and an opportunity to be heard before being deprived of a significant property interest were **clearly established rights**. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotations omitted).

The Supreme Court has long recognized that property interests are defined by state law, not the Constitution itself. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972). As set forth in Plaintiffs' brief, Michigan law and the Township's zoning framework

afforded Plaintiffs a legitimate claim of entitlement to continue their business operations, not a mere unilateral expectation.

This Court has likewise recognized that an individual's interest in the means by which they earn their livelihood constitutes one of the most significant forms of property protected by the Due Process Clause. See *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988). Here, Soil Friends is not merely a parcel of real estate; it is Plaintiffs' primary source of income. Its condemnation and forced closure thus represented not only an attack on property, but also on Plaintiffs' ability to earn a living.

As explained in Plaintiff's Brief in greater detail, the conduct surrounding the Township's informal hearing exemplifies why Plaintiffs' due process claims fall within clearly established law. Michigan law explicitly prohibits legal representation at such hearings. MCL 600.8719. Yet the Township's attorneys appeared, submitted a pre-drafted order, and converted a minor citation (carrying only a $25 fine) into a sweeping injunction that shut down nearly all of Plaintiffs' business operations, including the sale of crops, Christmas trees, eggs, farm tours, seasonal events, and agritourism activities. This was no technical defect. It was a calculated effort to impose expansive restrictions without lawful authority, at a hearing where Plaintiffs were unrepresented, uninformed, and denied a meaningful opportunity to respond.

This was not regulatory error or negligence, but a deliberate act by Township officials to deprive Plaintiffs of their livelihood without notice, counsel, or lawful process. By closing a functioning agricultural enterprise in direct violation of state law, Defendants engaged in conscience-shocking conduct that demands redress under the Fourteenth Amendment.

The Supreme Court has also emphasized that due process requires not just the chance to be heard, but a fair hearing before a neutral decisionmaker and must soley rely on legal standards. *Ohio Bell Tel. Co. v. Pub. Utils. Comm'n*, 301 U.S. 292 (1937); *United States v. Abilene & S. R. Co*., 265 U.S. 274, 288-289 (1924).

Further this court has found that it is fundamental that the right to be free of such retaliation, arbitrary and capricious state action, and disparate treatment with no rational basis is clearly established. See, e.g., *Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002); *Warren v. City of Athens*, Ohio, 411 F.3d 697, 707-08 (6th Cir. 2005); *Scarbrough v. Morgan Cnty. Bd. of Educ*., 470 F.3d 250, 261 (6th Cir.20) ("A plaintiff may demonstrate that the government action lacks a rational basis . . . by [showing] that the challenged government action was motivated by animus or ill-will.").

Here, as shown in Plaintiffs brief, they were denied that most basic safeguard. The Township secured an overbroad order, drafted by its own counsel, in a proceeding that lacked neutrality, legal standards, or evidentiary grounding. The

result was not regulation, but punishment. Plaintiffs were not given a meaningful opportunity to present or rebut their case; nor did the Township or the presiding official articulate findings grounded in the record or law. Instead, Plaintiffs allege that the expansive restrictions imposed on the Red Barn were driven by impermissible motives, including personal animus and retaliation for Plaintiffs' exercise of protected First Amendment speech. Specifically, Plaintiffs' public commentary and advocacy regarding Township governance preceded an abrupt shift in the treatment of their land-use applications and the judicial order secured at the informal hearing.

In sum, Plaintiffs' Fifth and Fourteenth Amendment claims rest on rights that are not novel but firmly embedded in constitutional doctrine: the right to notice and a meaningful hearing before deprivation of property; the right to pursue one's livelihood free from arbitrary interference; the right to a neutral decisionmaker; and freedom from arbitrary and capricious state action. By dismissing those claims, the District Court misapplied the clearly established standard and insulated conduct that precedent has long condemned.

### C. PLAINTIFFS HAVE ADEQUATELY PLEAD DUE PROCESS AND REGULATORY TAKING CLAIMS.

Plaintiffs also alleged that Defendants' actions amounted to (1) a taking without just compensation in violation of the Fifth Amendment's Takings Clause, and (2) a regulatory taking so severe that it destroyed the property's value and thus

operated as a de facto eminent domain action without due process of law. The District Court and Defendants dismissed these claims on the ground that Plaintiffs failed to show they implicated clearly established rights. That conclusion ignores this Court's precedent.

Over thirty years ago, in *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992), this court outlines multiple categories constitutional violations typically asserted in federal zoning cases. Those categories include: (1) just compensation claims where zoning deprives property of value; (2) due process takings claims where zoning goes "too far" and effectively destroys economic use; (3) substantive due process claims where zoning is arbitrary and capricious, either facially or as applied; (4) equal protection claims based on suspect classification or economic discrimination; (5) procedural due process claims involving denial of fair process in land-use decisions; and (6) First Amendment claims where zoning burdens speech or religious exercise.

Plaintiffs' allegations fit squarely within this framework. Far from advancing novel theories, they invoke claims that this Court found to be clearly established right recognized decades ago as firmly grounded in constitutional law.

## II. THE DISTRICT COURT ERRED IN ITS APPLICATION OF THE 12(b)(6) STANDARD REGARDING QUALIFIED IMMUNITY.

The District Court erred by collapsing the qualified-immunity inquiry into a fact-weighing exercise inappropriate at the Rule 12(b)(6) stage. Defendants' states that

the “Plaintiffs simply quibble that the burden to overcome qualified immunity is not high at the 12(b)(6) stage and insist that their allegations, if taken as true, constitute violations of clearly established rights. This Court is apparently expected to simply take Plaintiffs at their word on this point while they failed to advance a single case in support of this position.”

However, the Plaintiffs do not simply quibble with the burden but recognizes the precedent of this Court. As explained in the Plaintiffs brief and below appeals from motions to dismiss on the pleadings under Fed. R. Civ. P. 12(c) are reviewed de novo, pursuant to the same standards that should have been applied in the district court. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party ***must be taken as true***, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted). While the FAC need not present “detailed factual allegations,” it must allege sufficient “factual content” from which a court, informed by its “judicial experience and common sense,” could “draw the reasonable inference” [of the discrimination or harassment alleged]. *Iqbal*, 556 U.S. at 678, 679. Thus, as explained in the Plaintiffs’ brief, when their allegations are taken as true they comfortably meet the requirements set out above.

Furthermore, Defendants' response mentions the importance of qualified immunity and the need to not stand trial or face the other burdens of ligation. Nevertheless, the Defendant failed to recognize that although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, **that point is usually summary judgment and *not dismissal under Rule 12.*"** *Courtright*, 839 F.3d at 518; see *Kaminski v. Coulter,* 865 F.3d 339, 344 (6th Cir. 2017) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)) (stating that "it is 'generally ***inappropriate*** for a District Court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity,' [and we prefer] instead that courts resolve the issue at summary judgment.").

## III. PLAINTIFFS FIRST AMENDED COMPLAINT SUFFICIENTLY ALLEGES A *MONELL* CLAIM AND SUCH A CLAIM MUST BE ADJUDICATED.

The Defendants argue in their response that Plaintiff's Amended Complaint did not contain a *Monell* claim, claiming that it is nothing more than a "thinly vailed attempt to raise a new claim on appeal." Defendants' position is wrong, as Defendants' argument misstates and ignores the federal pleading rules, relevant case law, and the content of the First Amended Complaint, and ultimately aims to deprive Plaintiffs of their rights to due process, something this Court cannot ignore.

The First Amended Complaint is properly plead under the federal standard which call for "a short and plain statement of the claim showing that the pleader is

entitled to relief," Fed. R. Civ. P. 8(a). It does not mandate the identification of precise legal theories or the use of technical labels. "As a general rule, a plaintiff's complaint need not expressly plead legal theories; it is sufficient to plead factual allegations that can establish a viable theory." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). The federal rules require a Plaintiffs to plead facts sufficient to show his or her claim has substantive plausibility, but "they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.*

Defendants' use of *Brenay v. Schartow,* 709 F. App'x 331 (6th Cir. 2017) as authority for their argument is misplaced as Defendants simply pluck convenient bits of the ruling, omitting to the Court critical language that further defines the precedent. Specifically, clarifying what would be considered "mention[ing] a possible argument in the most skeletal way." *Id*. What *Brenay* specifically states is "mention[ing] a possible argument in the most skeletal way," is where a party "leave[s] it to the court to seek out the relevant law, identify the relevant evidence, and develop their argument for them." *Id*. This is simply not the case under the circumstances, as the issue is based on the First Amended Complaint alone, and not on any articulatable argument as may occur in a motion for summary judgment.

Here, Plaintiffs met the requirements for pleading claims, including a *Monell* claim, and the District Court was wrong to dismiss them. Specifically, the FAC

details including, *inter alia*: (1) a citation and condemnation order issued in retaliation for Plaintiffs' speech; (2) an informal hearing in which the Township unlawfully injected its attorney despite MCL 600.8719's prohibition; (3) the Township's imposition of arbitrary and financially ruinous requirements, including the $200,000 sprinkler condition, lacking any rational basis; and (4) coordinated false communications to state regulators designed to cripple Plaintiffs' business. These actions were not isolated missteps but reflected deliberate municipal decision-making and enforcement policies. Additionally, the Amended Complaint alleges that Township policymakers, including its Community Development Director, Planning Commission, and retained counsel acting on behalf of the Township, directly engaged in the retaliatory and unconstitutional actions. Those allegations, taken as true, suffice to establish municipal liability at the pleading stage under a theory of *Monell*.

As long as the factual allegations in the complaint are sufficient to establish *Monell* as a viable theory, the First Amended Complaint satisfies this standard as it alleges that Comstock Township and KABA engaged in unconstitutional conduct that caused the deprivation of constitutional rights, which are the foundational elements of a *Monell* claim. Accordingly, Plaintiffs have stated a viable *Monell* claim, dismissal was premature and contrary to governing federal standards.

## IV. THE DISTRICT COURT ABUSED ITS DISTRCTION IN DISMISSING PLAINTIFFS' FEDERAL CLAIMS WITH PREJUDICE.

The dismissal of Plaintiffs' claims with prejudice is an abuse of discretion under the circumstances. Under the particular circumstances of this case the Amended Complaint was filed pursuant to a stipulation and negotiation between the Parties. Plaintiffs were never put on notice of any specific deficiencies by the District Court and were never granted leave to cure any perceived defects. Since, Plaintiffs were never afforded a meaningful opportunity to amend the claims to facilitate any issues brought by the District Court in its Opinion and Order, the Trail Court abused its discretion in dismissing the case with prejudice.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court: (1) Reverse the District Court's Opinion and Order; (2) Remand this case for further proceedings on the merits; (3) In the alternative, remand with instructions to permit Plaintiffs eave to amend their complaint pursuant to Rule 15(a)(2); and (4) Grant such other and further relief as this Court deems just and proper.

Dated September 12, 2025

Respectfully Submitted,
/s/ Steven J. Kustra

By: Steven J. Kustra (P79002)
KUSTRA & BLOOM PLC
Steven J. Kustra (P79002)
21002 Mack Avenue

Grosse Pointe Woods, MI 48236
(313) 586-4444
skustra@kustrabloom.com
*Attorneys for Plaintiffs/Appellants*

**CERTIFICATE OF COMPLIANCE**

This document complies with the Federal Appellate Rules of Procedure because excluding the parts of the document exempted this document contains 3,933 words. Additionally, this document complies with the typeface and type style requirements of said Rules because this document has been prepared in a proportionally spaced type phasing using Times New Roman in 14 font.

/s/ Steven J. Kustra, Esq.

**CERTIFICATE OF SERVICE**

I certify that on September 12, 2025, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are represented by counsel and are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Steven J. Kustra, Esq.